# JIN FUEY MOY *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 44. Argued October 11, 1920.—Decided December 6, 1920.

1. In a case properly here on a constitutional question under Jud. Code, § 238, the court retains its jurisdiction to decide other questions presented, after the constitutional question has been settled in another case. P. 191.

2. In an indictment charging defendant with unlawfully selling mor-

phine in violation of the Anti-Narcotic Act by issuing a prescription, the clause as to issuing the prescription, being intimately involved in the description of the offense, cannot be treated as surplusage, but it is not repugnant to the charge of selling, since under the act one person may take a principal part in a prohibited sale of morphine belonging to another by issuing a prescription for it, in view of Crim. Code, § 332, making whoever aids, abets, counsels, commands, induces or procures the commission of an offense a principal. P. 192.

3. Subdivision (a) of § 2 of the Anti-Narcotic Act, in allowing the dispensing or distribution of narcotic drugs "to a patient" by a registered physician "in the course of his professional practice only," confines the immunity strictly within the appropriate bounds of a physician's professional practice, not permitting sales to dealers or distributions intended to satisfy the appetites or cravings of persons addicted to the use of such drugs. P. 194.

4. In a criminal prosecution in the District Court in Pennsylvania, the defendant's wife is not competent to testify for her husband, either generally or by contradicting testimony that certain matters transpired in her presence. P. 195.

253 Fed. Rep. 213, affirmed.

The case is stated in the opinion.

*Mr. H. Ralph Burton*, with whom *Mr. Blaine Mallan* was on the briefs, for plaintiff in error.

*The Solicitor General* for the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

Plaintiff in error was indicted and convicted for violating § 2 of an Act of Congress approved December 17, 1914, commonly known as the Harrison Anti-Narcotic Act (38 Stat. 785, c. 1).[1] His motion in arrest of judgment having

---

[1] SEC. 2. That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. . . . Nothing contained in this section shall apply—

(a) To the dispensing or distribution of any of the aforesaid drugs

been overruled (253 Fed. Rep. 213), he brought the case here by direct writ of error under § 238, Judicial Code, upon the ground of the unconstitutionality of the act. Afterwards this question was set at rest by our decision in *United States* v. *Doremus*, 249 U. S. 86, sustaining the act; but our jurisdiction continues for the purpose of disposing of other questions raised in the record. *Brolan* v. *United States*, 236 U. S. 216; *Pierce* v. *United States*, 252 U. S. 239.

These questions relate to the sufficiency of the indictment, the adequacy of the evidence to warrant a conviction, the admissibility of certain evidence offered by defendant and rejected by the trial court, and the instructions given and refused to be given to the jury.

The indictment contained twenty counts, differing only in matters of detail. Defendant was convicted upon eight counts, acquitted upon the others. Each count averred that on a date specified, at Pittsburgh, in the County of Allegheny, in the Western District of Pennsylvania, and within the jurisdiction of the court, defendant was a practicing physician, and did unlawfully, willfully, knowingly, and feloniously sell, barter, exchange, and give away certain derivatives and salts of opium, to-wit, a specified quantity of morphine sulphate, to a person named, not in pursuance of a written order from such person on a form issued in blank for that purpose by the

to a patient by a physician, dentist, or veterinary surgeon registered under this Act in the course of his professional practice only: *Provided*, That such physician, dentist, or veterinary surgeon shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, the date, and the name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist or veterinary surgeon shall personally attend; . . .

(*b*) To the sale, dispensing, or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under this Act: . . .

Commissioner of Internal Revenue under the provisions of § 2 of the act, "in manner following, to-wit, that the said Jin Fuey Moy, at the time and place aforesaid, did issue and dispense" to the person named a certain prescription of which a copy was set forth, and that said person "was not then and there a patient of the said Jin Fuey Moy, and the said morphine sulphate was dispensed and distributed by the said Jin Fuey Moy not in the course of his professional practice only; contrary to the form of the Act of Congress," etc.

It is objected that the act of selling or giving away a drug and the act of issuing a prescription are so essentially different that to allege that defendant sold the drug by issuing a prescription for it amounts to a contradiction of terms, and the repugnance renders the indictment fatally defective. The Government suggests that the clause as to issuing the prescription may be rejected as surplusage; but we are inclined to think it enters so intimately into the description of the offense intended to be charged that it cannot be eliminated, and that unless defendant could "sell," in a criminal sense, by issuing a prescription, the indictment is bad. If "selling" must be confined to a parting with one's own property there might be difficulty. But by § 332 of the Criminal Code, "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." Taking this together with the clauses quoted from § 2 of the Anti-Narcotic Act, it is easy to see, and the evidence in this case demonstrates, that one may take a principal part in a prohibited sale of an opium derivative belonging to another person by unlawfully issuing a prescription to the would-be purchaser. Hence there is no necessary repugnance between prescribing and selling, and the indictment must be sustained.

The evidence shows that defendant was a practicing

physician in Pittsburgh, registered under the act so as to be allowed to dispense or distribute opium and its derivatives without a written order in official form, "in the course of his professional practice only"; that he was in the habit of issuing prescriptions for morphine sulphate without such written order and not in the ordinary course of professional practice; that he issued them to persons not his patients and not previously known to him, professed morphine users, for the mere purpose, as the jury might find, of enabling such persons to continue the use of the drug, or to sell it to others; in some cases he made a superficial physical examination, in others none at all; his prescriptions called for large quantities of morphine—8 to 16 drams at a time—to be used "as directed," while the directions left the recipient free to use the drug virtually as he pleased. His charges were not according to the usual practice of medical men, but according to the amount of the drug prescribed, being invariably one dollar per dram. All the prescriptions were filled at a single drug store in Pittsburgh, the recipients being sent there by defendant for the purpose; and persons inquiring at that drug store for morphine were sent to defendant for a prescription. The circumstances strongly tended to show coöperation between defendant and the proprietors of the drug store. At and about the dates specified in the indictment—the spring of the year 1917—and for more than two years before, the number of prescriptions issued by defendant and filled at this drug store ran into the hundreds each month, all calling for morphine sulphate or morphine tablets in large quantities. In one case a witness who had procured from defendant two prescriptions—one in his own name for 10 drams, the other in the name of a fictitious wife for 6 drams—and had been directed by defendant to the specified drug store in order to have them filled, asked defendant to confirm the prescriptions by telephone so there would be no trouble; to which defendant replied:

"Oh, never mind; we do business together; we under-
stand each other." On another occasion the same witness,
having received from defendant two prescriptions for 8
drams each, one in his own name, the other in the name of
the supposed wife, stating in one case a Cleveland address,
in the other a Pittsburgh address, presented them at the
drug store to be filled, and was told by the manager that
he would not fill any more prescriptions under a Pittsburgh
address; "they were taking too big a chance, and I must go
back to the Chinaman and tell him what he told me, and
he would understand—the Chinaman would understand."
Witness returned the two prescriptions to defendant, told
him what the manager had said, and defendant retained
those prescriptions and issued to the witness a new one
for 16 drams in place of them, with which the witness
returned to the drug store and procured the specified
quantity of the drug.

In each case where defendant was found guilty the
evidence fully warranted the jury in finding that he aided,
abetted, and procured a sale of morphine sulphate without
written order upon a blank form issued by the Commis-
sioner of Internal Revenue; and that he did this by means
of a prescription issued not to a patient and not in the
course of his professional practice, contrary to the prohibi-
tion of § 2 of the act. Manifestly the phrases "to a
patient" and "in the course of his professional practice
only" are intended to confine the immunity of a registered
physician, in dispensing the narcotic drugs mentioned in
the act, strictly within the appropriate bounds of a physi-
cian's professional practice, and not to extend it to include
a sale to a dealer or a distribution intended to cater to the
appetite or satisfy the craving of one addicted to the use
of the drug. A "prescription" issued for either of the
latter purposes protects neither the physician who issues it
nor the dealer who knowingly accepts and fills it. *Webb* v.
*United States*, 249 U. S. 96.

Errors assigned to the instructions given and refused to be given by the trial judge to the jury are disposed of by what we have said.

But a single point remains—hardly requiring mention—the refusal to permit defendant's wife to testify in his behalf. It is conceded that she was not a competent witness for all purposes, a wife's evidence not having been admissible at the time of the first Judiciary Act, and the relaxation of the rule in this regard by § 858, Rev. Stats., being confined to civil actions. *Logan* v. *United States,* 144 U. S. 263, 299–302; *Hendrix* v. *United States,* 219 U. S. 79, 91. But, it is said, the general rule does not apply to exclude the wife's evidence in the present case because she was offered not "in behalf of her husband," that is, not to prove his innocence, but simply to contradict the testimony of particular witnesses for the Government who had testified to certain matters as having transpired in her presence. The distinction is without substance. The rule that excludes a wife from testifying for her husband is based upon her interest in the event, and applies irrespective of the kind of testimony she might give.

The judgment under review is

*Affirmed.*