## GREAT FALLS GAS CO. v. PUBLIC SERVICE COMMISSION OF MONTANA et al.

### No. 585.

District Court, D. Montana.

Feb. 4, 1930.

E. G. Toomey and Gunn, Rasch & Hall, all of Helena, Mont., and Maddox & Church, of Great Falls, Mont., for plaintiff.

L. A. Foot, Atty. Gen., and Francis A. Silver, of Helena, Mont., for defendants.

BOURQUIN, District Judge.

In this suit, a permanent injunction was granted after final hearing before the court, the District Judge sitting with and assisted by two others. See 34 F.(2d) 297.

Plaintiff's counsel presented a form of decree to the District Judge, and by him it was passed and the names of the three judges attached, the latter perhaps needlessly. Defendants moved to strike matter alleged to have been improperly included. Coming on to be heard before the court, plaintiff's counsel in reliance upon Ex parte Northern, etc., Co., 280 U. S. 142, 50 S. Ct. 70, 74 L. Ed. ——, emphatically and even heatedly objected that there is no jurisdiction of the motion save when the three judges are again assembled.

By the court reminded that their form of decree was passed and signed as usual in reliance upon counsel [see Johnson's Case (D. C.) 35 F.(2d) 355, 356], and admonished that, if thus they secured a decree broader than their client's right, their present attitude might indicate design and could be construed as an aggravating determination to maintain an unfair advantage, in consequence of which it would be "one of those cold days the old timer tells about before another of your forms will be signed without long scrutiny under the judicial microscope," their objection was promptly withdrawn. If the objection was valid, the withdrawal avails nothing, save to recall to mind some comment in Newman's Case (D. C.) 25 F.(2d) 357.

The statute involved (section 380, tit. 28, USCA) was enacted when the evils of "government by injunction" were notorious, viz. the activities of sovereign states paralyzed, their statutes overturned, organized labor oppressed, jury trials superseded by contempt proceedings, and all by a too complaisant judiciary in behalf of great corporations. Its object was to afford a remedy for the first only of these evils; later laws for the others. Therein Congress was not obsessed by any delusions of grandeur attaching to mere office, power, label, regalia, and understood both the men composing the judiciary and the reasons and influences responsible for their appointment. It knew even as the people now do, that those who come and go upon the bench are average and not supermen, to whom respect is due solely to the extent their decisions merit it, and not at all because of that anachronism, the gowns of antiquity to which they tenaciously cling; that what the man was the judge is; that birth, breeding, education, environment, associations, clientele, ingrained habits, views, and opinions of the man are inevitably reflected in and may dictate the decrees of the judge; that, as the great Marshall declared, "all power wherever reposed is abused"; that Cato's famous dictum is too often verified; and that from time to time legislation is necessary to some limit, control, and annul judicial authority. Accordingly Congress has even hurriedly repealed laws in order to prevent the Supreme Court from consideration of appeals pending in it; has seriously debated depriving the court of power in respect to certain 5-4 decisions; has before it even now, bills to deprive federal courts of all jurisdiction in these rate cases, and the Legislature of the great state of New York has unanimously memorialized Congress to enact or pass them; has abolished courts by it created, in order to defeat political strategy and remove judges, and to escape judicial antagonism to beneficent laws. And Congress enacted section 380 for analogous reasons. The specific evil this statute was designed to remedy, was not injunction per se, but was the suspicion and abuse attaching when granted by a single member of the judiciary; was not results, but ways and means; was not the effects of injunctions, but merely the causes of them. No evil existed and no objection was made because a single member of the judiciary or a court of a single judge heard and determined issues of jurisdiction, process, pleading, and made orders incidental to progress of any variety of suits. It was only when applications for injunctions were thus disposed of, that abuses were perceived and by public opinion resented. Congress made this clear by the terms of section 380, which in the original enactment are that no Supreme Court Justice or judge or District Court shall issue an interlocutory injunction against state action alleged to be unconstitutional, unless the application has been presented to a Supreme Court Justice or to a judge (not to the court), "heard and determined by three judges" (not by any court), at least one of whom must be a Supreme Court Justice or Circuit Judge, and is granted by at least two concurring; that, presented as aforesaid, the Supreme Court Justice or the judge shall "call to his assistance to hear and determine the application two other judges"; and that, from the order an appeal lies to the Supreme Court. The statute creates no new court nor increases the bench of any court. Obviously, on call by a Supreme Court Justice, the three assembled are not the Supreme Court or any other. They are merely the Supreme Court Justice exercising his power to grant injunctions, assisted by two other judges, as section 380 requires, in its curtailment of the justice's power. And as these provisions relating to the justice are also those relating to judges and District Courts, the construction in respect to both must be the same; that is, the three assembled on call by a District Judge are not the District Court or any other, but are the District Judge assisted by the two, exercising the power theretofore vested wholly and equally in either and both District Judge and court.

Recent amendment, however, provides that "the requirement respecting * * * three judges shall also apply to the final hearing in such suit in the district court." 28 USCA § 380. That is, in final hearing in the special case, the District Court still consists of the District Judge, but, assisted by two

others who may be Supreme Court Justices or Circuit Judges, the decision of any two of whom becomes the judgment of the court. Since the precedent evil, and the reason, plain terms, and object of section 380 are involved in and limited to hearing applications for injunctions, it is hardly necessary to point out the downright absurdities involved in construction of this special statute to include process, pleading, jurisdiction, incidents to progress of the suit, and to that extent to impliedly repeal prior general statutes. But to illustrate one, on an insufficient complaint an injunction order issues to endure "until the hearing and determination of the application for an interlocutory injunction," and the call issues for two judges. If this exhausts the power of the District Judge or court, the date of hearing must be fixed by the three when assembled, and five days future to permit the statutory notice. For five days these three judges cool their heels about the corridors, then determine the complaint insufficient, and allow time for amendment. This may happen more than once in a single suit, likewise by reason of other and incidental issues, necessitating several journeys and abortive assemblages of the three. Also in the meantime the District Judge is without power to expedite by bringing the suit to issue so that the application and final hearing may be heard at one and the same time, or to refer to a master to hear and report the evidence. And, finally, the insufficiency of the complaint not being overcome by amendment, or some other fatal defect appearing, necessitates dismissal of the suit (by what or whom?) and the application is not heard at all! Yet for months the state has been paralyzed by an improvident injunction order, with *no power anywhere to dissolve it!* Meanwhile, the patient public has paid the price.

All these clear aggravations of the evils section 380 is designed to remedy are avoided by taking this special statute as written, instead of resorting to strained construction contrary to its spirit and letter, to impliedly repeal general laws. And the settled practice has been for District Courts to call, fix time, refer to a master, and consolidate the preliminary and final hearing, without question of their power, as even the Supreme Court reports disclose. Any extension of section 380 beyond hearings for injunctions should be left to congressional rather than to judicial legislation. It is the latter variety of enactment which inspired the ancient aphorisms that "law is the last guess of the odd judge of the appellate court," and "only the Al-

mighty foresees what the appellate court will do." Judicial legislation may be inescapable. All courts indulge it, not alone by reading into statutes what Legislatures did not include, but also by new judges expressly or impliedly reversing the old of different attributes as aforesaid, removing ancient landmarks by the latter erected.

Interesting and instructive illustrations may be cited from even the Supreme Court reports, some time by 6-3 or 5-4 decisions. Amongst others is the Rosen Case, 245 U. S. 468, 38 S. Ct. 148, 62 L. Ed. 406, reversing the cases and repealing the law of more than one hundred years, to legislate competency as witnesses in behalf of convicts, though curiously enough the like was refused to husband and wife in Jin Fuey Moy's Case, 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214. Likewise did Cudahy's Case, 278 U. S. 466, 49 S. Ct. 204, 73 L. Ed. 454, in part annul the law of the Baltic Case, 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127; Farmers', etc., Co.'s Case, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. ——, the law of Blackstone's Case, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439; and International, etc., Co.'s Case, 280 U. S. 291, 50 S. Ct. 89, 74 L. Ed. ——, the law of several earlier cases, as therein Mr. Justice Stone points out, by closing the judicial eye to their very existence, that silent treatment to which Mr. Justice Holmes refers in Southern, etc., Co. v. Darnell, 245 U. S. 535, 38 S. Ct. 186, 62 L. Ed. 451.

The import of Ex parte Northern, etc., Co., supra, its effect upon procedure, and whether it justifies plaintiff's objection, necessitates consideration of all details of the suit. It originated in this court. The complaint alleged it "arose under the commerce clause of the Constitution" and the Fourteenth Amendment; that the state board by order had established intrastate rates which would upset established rate structure, affect interstate rates, discriminate against localities, diminish plaintiffs' intrastate revenues, and "is violative of section 13 of the Interstate Commerce Act (49 USCA § 13)." That the complaint was insufficient in facts to state a cause of action was clear, and is now virtually admitted. Docketed in Judge Bourquin's division, it was presented to the court in Judge Pray's division, he sitting, together with an application that the "court" grant a temporary injunction to endure until conclusion of a section 13 (49 USCA § 13) hearing plaintiffs were seeking before the Interstate Commerce Commission, and that the "presiding judge" grant a restraining order and "convene three judges" to hear the application. Incidental-

ly, the defendant board's order was made March 18, 1929, effective April 17, 1929, and the complaint and application were presented April 15, 1929, the delay affording plaintiffs excuse for the usual "rush" order without that notice to defendants which section 381 (28 USCA) requires save in real emergency. Restraining order issued, but, in usual procedure and with counsels' acquiescence, the call was deferred to ascertain the judges' convenience. Thereafter defendants moved to dissolve and to dismiss for that the complaint was insufficient for any relief. The motions were heard by the court, Judge Bourquin sitting, over plaintiffs' objections to the court thus constituted, and the motion to dismiss was granted. However, no decree of dismissal was ever presented, passed, or entered.

It appears the Interstate Commerce Commission refused a section 13 (49 USCA § 13) hearing to plaintiffs, and they sought mandamus against it and also against this court, the latter in the Supreme Court, one justice of which granted an injunction or restraining order. Thereafter, and July 2, 1929, plaintiffs' counsel filed, and more than three weeks later presented to Judge Bourquin, a petition addressed to the court and to Judges Pray and Bourquin to convene three judges, which August 6, 1929, was denied by the court, Judge Bourquin sitting. See Northern Pac. Ry. Co. v. Board of Railroad Com'rs (D. C.) 34 F.(2d) 295. It is worthy of notice here, that in their mandamus proceedings plaintiffs' counsels' attitude was that only Judge Pray and not Judge Bourquin had jurisdiction to even call two judges; that three weeks after filing said petition plaintiffs' counsel presented to the clerk of this court a form reciting that the said petition had been by the clerk presented to Judge Bourquin "at the request of the solicitors for the defendants," which of course the clerk refused to certify; and that, if said petition and the course of its presentation was made known to the Supreme Court, it does not appear in anything of the little brought to respondents' notice in the mandamus proceedings. In answer to the rule, return was made, and in decision the Supreme Court held the matter was foreclosed by four of its decisions which "leave no doubt on these points"; that the rule against respondents therein named, viz. this court, Judge Pray and Judge Bourquin, be made absolute "with directions to them to vacate the decree of dismissal * * * and to take immediate steps for assembling a court of three judges to hear and determine the application for an interlocutory injunction."

Assuming that section 380 (28 USCA) contemplates that as usual the court can do whatever its judge alone can do, and assuming the said directions to "them" did not require that the court and its two judges should convene, but that any one of "them" could act, December 14, 1929, the court, Judge Bourquin sitting (thus two of "them"), counsel for both parties attending, none of whom objected or demurred, called Judges Dietrich and Pray to assemble with him January 25, 1930, to hear and determine the application for interlocutory injunction and also final hearing, evidence to be timely presented to a master named and by him returned; and order was then made and entered accordingly. But the court inadvertently overlooked and failed to expressly order that the dismissal be vacated (not the decree as ordered by the Supreme Court, for there was no decree), though by the other orders and proceedings inconsistent with said dismissal, in settled law such vacation would be implied and sufficient. It is submitted that then and there respondents had complied with the Supreme Court's directions to "them," and what followed is wholly unwarranted. Later, according to street rumor, plaintiffs' made some variety of complaint to the Supreme Court, and this court's attention thus attracted to the inadvertence, it, Judge Bourquin sitting, December 26, 1929, made express order vacating the dismissal, the mythical decree of dismissal.

Thereafter, January 2, 1930, on the street plaintiffs' counsel presented to Judge Bourquin a motion to set aside the order for reference to a master and final hearing, which on January 3, 1930, the court, Judge Bourquin sitting, denied. At no time in this court or to either judge did plaintiffs object to the call to two judges or to the date of assembly aforesaid, or move to vacate either. Again according to street rumor only, January 6, 1930, plaintiffs' complaint aforesaid was brought to the Supreme Court's notice. Whether they advised that court of the express dismissal made December 26, 1929, and of Judge Bourquin's call to two judges, is unknown, though unlikely they did, taking into account the contents of the Supreme Court's order following.

January 13, 1930, the Supreme Court issued another mandate couched in peremptory and harsh terms, which ordered Judge Pray to call two judges (though it does not order vacation of Judge Bourquin's like order and fixing the date), and ordered Judge Bourquin to do what he had expressly done nineteen days before, and, impliedly, thirty days

180

before; that is, to set aside the dismissal, and also to vacate so much of the order of December 14, 1929, "as assumes to appoint" a master and to "fix a time for final hearing." In compliance, Judge Pray called Judges Dietrich and Bourquin to convene January 25, 1930, and Judge Bourquin, amongst other things, went through the motions to again vacate the dismissal.

The three judges have heard the application for an interlocutory injunction, and later, inconsistently enough, plaintiffs' counsel moved the court, Judge Bourquin sitting, for leave to amend the complaint, which was granted.

All that Ex parte Northern, etc., Co., supra, decides is that, in the circumstances of that suit, Judge Bourquin "was without jurisdiction to hear the motion to dismiss the bill on the merits," in support of which is cited four of the court's decisions. Only one of them is even remotely analogous, viz. the Metropolitan Water Case, 220 U. S. 539, 31 S. Ct. 719, 55 L. Ed. 610. In it the complaint alleged facts sufficient to entitle plaintiff to relief, provided the state statute was unconstitutional as the complaint also alleged, and application was made for an interlocutory injunction. The District Court, one judge sitting, proceeded to hear argument in respect to the statute, decided it was constitutional, denied an interlocutory injunction, but did not dismiss the suit. The Supreme Court held he had no "jurisdiction over the subject-matter of the right to such injunction," and reversed his decision. Looking through form to substance, it is clear the District Judge did that which section 380 forbids, viz. he alone heard and determined an application for injunction based on alleged unconstitutionality of the state statute, which latter is the principal thing to be determined (relegated by said section to three judges), and to which the injunction is merely incidental, and also determined that the statute was not unconstitutional.

The difference between that case and Ex parte Northern, etc., Co., supra, is that in the latter the facts alleged were wholly insufficient to warrant relief, whether or not the board's order was constitutional; that the court did not decide whether or not it was, but dismissed the complaint solely for insufficiency of the pleading; and that thus the stage requiring the application for injunction be heard and by three judges was not reached and the right not determined. That was left until such time, if ever, as plaintiffs by amendment converted a complaint, in legal effect waste paper, into one setting out a prima facie right to relief.

In reality, Ex parte Northern, etc., Co., supra, more resembles Collins Case, 277 U. S. 565, 48 S. Ct. 585, 72 L. Ed. 990, by it ignored, which holds that, although the complaint alleges the conclusion that the state statute is involved and unconstitutional, the District Court, one judge sitting, may examine the facts pleaded and determine that they do not make out a case for relief, whether or not the state statute be unconstitutional. See, also, Williams Case, 277 U. S. 267, 48 S. Ct. 523, 72 L. Ed. 877. If any conflict with the Metropolitan Case, it was believed the later Collins Case was for the time being the "presently approved doctrine," as Mr. Justice McReynolds cautiously if naively phrases it in Farmers, etc., Co. Case, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. ——, removing another of the landmarks set by his predecessors of other times, manners, concepts. And, in so far as Ex parte Northern, etc., Co., supra, restores (if not grants) and sanctions injunction orders on a worthless complaint, contrary to first principles and to the immemorial rule in equity that none shall go until right to it appears "reasonably free from doubt" (see Cavanaugh v. Looney, 248 U. S. 456, 39 S. Ct. 142, 63 L. Ed. 354) or tends to hold that the judge is reduced to the level of a rubber stamp to assemble judges on demand, whether or not the pleading discloses right to relief, it is to be hoped it too is only "presently approved doctrine," in due time to be by Congress repealed, if not by the court creating it.

■■ However that may be, whether or not the cases cited are reconcilable, it is believed this court has jurisdiction of the pending motion to amend its decree if necessary to conform to truth. The order involved prescribed rates, incidentally also ordering plaintiff to cease paying gross receipts tax, to abolish penalties on delayed rate payments, to report monthly, and the like; and the complaint, alleging that the rates were confiscatory by reason of the aggregate of the regulations in the order contained, sought injunction against the whole. In the three-judge decision, the situation thus presented is commented upon in general terms. The decree, however, in perhaps unnecessary detail, in terms, enjoins rates and incidentals as aforesaid. The provisions in respect to the latter are the subject of the motion to strike. The commission's hearing and order in respect to rates are principal; all else, mere incidents to effectuate. The whole was intended to ac-

complish a single purpose, was intended to be and is interdependent and inseparable. The latter follow the former, and, the order invalid, the incidents are likewise, which is but to say that "the tail goes with the hide." That the commission may lawfully impose these incidentals upon plaintiff may be granted, provided it be not done as mere incidents of an invalid order as here.

It follows that the motion to strike is not well taken, and is denied.