**UNITED STATES v. DECKER et al.**

No. 19981.

District Court, D. Maryland.

July 24, 1943.

See, also, 51 F.Supp. 15.

William Curran and R. Palmer Ingram, both of Baltimore, Md., for defendant, Decker.

Simon E. Sobeloff, of Baltimore, Md., for defendant, Kann.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., Wm. A. Paisley, Sp. Asst. to Atty. Gen., and Ellis L. Arenson, Sp. Atty., Department of Justice, of Baltimore, Md., for plaintiff.

**CHESNUT, District Judge.**

The above criminal case was tried to a jury on May 31 to June 8, 1943. After several hours deliberation the jury returned a verdict of guilty on the second count of the indictment and not guilty on the first count (as instructed by the court as to the first count) against both defendants, with recommendation to the mercy of the court. Within due time thereafter both defendants have separately filed motions in arrest of judgment and for a new trial. The only proper ground for arrest of judgment is the overruling of the demurrer to the indictment. This question has not been re-argued on the motion in arrest. The motion in arrest of judgment is, therefore, overruled as to both defendants.

The motion for a new trial presents numerous assigned grounds therefor. The principal ground now urged upon the court in support of the motion is that there was no evidence in the case legally sufficient to support the charge in the second count of the indictment that the defendants "furnished to the Secretary of the Navy of the United States, through the Price Adjustment Board of the Navy Department, pursuant to the provisions of section 403 of the '6th Supplemental National Defense Appropriation Act of 1942' *statements of the actual cost of production* of said Triumph Explosives, Inc., in the manufacture of ordnance materials under said contracts for the United States of America, which said statements, as the said defendants and each of them then and there well knew, contained false and misleading information in the following respects, to wit: said statements consisted of the totals of operating expense accounts of the corporation taken from the books of account of said corporation kept in the regular order of business."

The nature of the whole case and an outline of the evidence is contained in the court's charge to the jury which has been transcribed by the stenographer. Reference is made thereto in order to avoid repetition and unnecessary extension of this memorandum opinion.

While the point now urged was made in general terms in argument on the facts at the trial of the case, it is now presented and emphasized in a somewhat different way from its presentation at the trial. There the principal emphasis was on the insufficiency of the evidence to show that what the defendants did amounted to *furnishing* a statement. The point as now emphasized is that *what* was furnished did not constitute a *statement* within the meaning of section 403(e) of the Act of Congress approved April 28, 1942 cited as the "6th Supplemental National Defense Appropriation Act, 1942". Public Law 528, 77th Cong. c. 247, sec. sess. 41 U.S.C.A. note preceding section 1. Section 403(e) reads in part as follows: *"In addition to* the powers conferred by existing law, the Secretary of each Department shall have the right to demand of any contractor \* \* \* statements of *actual costs of production* and such other financial statements, at such times and in such form and detail, as such Secretary may require. *Any person* who willfully fails or refuses to furnish any statement *required* of him under this subsection, or *who knowingly furnishes any such statement containing information which is false or misleading in any material respect,* shall, upon conviction thereof be punished" etc. (Italics supplied.)

The evidence as to the defendants' action on this issue was outlined in the charge and will not be here repeated. The main point that is now emphasized is that when the representative of the Bureau, one Zipf, presented his letter of authority dated June 18, 1942, on July 7, 1942, to the defendant Decker, the latter did not then or thereafter give to Zipf any written statement of cost figures, and did not give to Zipf then or thereafter any oral statement of specific figures. It will be remembered that the letter presented by Zipf to the defendant Decker said "Triumph Explosives, Inc., is hereby requested to furnish the Navy Department with statements of actual costs of production under contracts with the Navy Department", etc. This letter was presented in person by Zipf to Decker, the executive vice president of the corporation, in the absence of Kann, the president. Zipf testified that he talked the matter over with Decker for about half an hour and that the substance of the conversation was that the corporation did not keep accounts which segregated costs of production for Navy contracts from other business, although it appeared from other evidence that in 1942 the United States Government's business with the corporation comprised about 90% of all the business of the corporation and the great majority of the government business was for the Navy

Department. In the absence of such segregated costs the best data that could be obtained as reflecting actual costs of production for the government contracts consisted in the total operating expense accounts of the corporation as contained in its books of account. Decker finally referred Zipf for a statement of these expenses to Criswell, another vice president particularly in charge of the accounting of the corporation. Criswell in turn introduced Zipf to Sabel, the accountant of the corporation, who, with assistants, was then engaged in auditing and preparing the second six months statement of operations of the corporation for the year ending July 31, 1942, only four months of which was then complete. Zipf spent several days in examining the corporation's books of account, conferring at certain times and from time to time with the corporation's accountants and as a result of his examination prepared a voluminous report which in due course was transmitted to the representatives of the Navy Department and which included (a) copies of balance sheets; (b) copies of summary of income and surplus; (c) copies of statement of cost of sales, selling and administration expenses, and other financial data. Zipf's report included the following comment: "3. Because of the absence of detailed cost records no information was obtained concerning profits on completed units or contracts as distinguished from the over-all results of the operations." Zipf's report was introduced in evidence as Plaintiffs' Ex. No. 31. Schedule C—Statement of cost of sales, included expense items for the completed fiscal years (ending July 31st) of 1937, 38, 39, 40, 41 and six months ended January 31, 1942. Among the items, with the amounts for the respective years were the following —Maintenance and repairs; professional fees, general factory expense; small tolls and supplies. And Schedule C—Selling and administrative expenses for 1937 to 1941 inclusive, and for the six months ended January 31, 1942, and estimated for the year ended July 31, 1942, included among other items, commissions, advertising expense, travelling expenses, entertainment, and miscellaneous.

The second count of the indictment under separate letters of the alphabet lists about 15 items varying in amount from a few hundred dollars to $84,000, which it was alleged constituted expenditures made from corporate funds for the personal bene-

fit of the defendants (the great majority for Decker) and which had been improperly charged by Decker's authority, and to his knowledge, to various corporate expense accounts, including, to McCreight Landscape Service, $4301.90, to *maintenance and repairs*; $1688.50 to Sulka & Co., New York, haberdashers, charged to "Entertainment", "Miscellaneous administration expense"; Small tools Expense", and "Advertising Expense"; one rug $2500 to *entertainment*; $179.14 to Keyes & Miller Lumber Co. to *repairs and maintenance*; $7956.88 for liquor, to *miscellaneous expenses and raw materials*; $84,106 to *commissions*; $3216.16 to Decker's son (on the payroll while in school) to *general factory expense*; $32,092.10 for Decker's *travelling expense*; $160 for a suit of clothes (for a Navy Inspector) to *general factory expense*; $9,000 to Decker for *professional fees*; $2800 for liquor to *entertainment expense account*.

At the trial evidence offered by the government was to the effect that the amount of such improper charges to expense accounts aggregated $100,000 or more. It further appeared from the evidence that these improper charges were necessarily reflected in Zipf's report taken from the corporate books and appeared in Schedule C above referred to although, of course, without segregation from the total operating expenses charged to the several expense accounts.

■■ The contention of the government is that section 403(e) is not limited to the furnishing of written statements by the defendants but is sufficient to include an oral statement if sufficiently clear and definite. More particularly stated, the position of the government is that when the Navy Department asked in writing for actual costs of production, Decker as the responsible and acting officer of the corporation referred Zipf to the books of the corporation for the information desired, he then knowing that the books contained false entries of total expense accounts as alleged in the indictment (to the extent found by the jury from the evidence) and that this was in substance and effect a statement that the books truly reflected the operating expenses, or at least the jury could properly find from the evidence that this was the effect of the transaction. If the costs of the several Navy contracts had been segregated on the books, and Decker had referred Zipf to the books for the statement of these costs,

the copying of the figures from the books by Zipf would clearly have been a statement of the costs furnished by Decker. The result is not different because the costs were not segregated but included in total operating expenses. Of course, as the jury was told in the charge, Decker was not responsible for the data on the books except to the extent that he knew the entries were falsely made, and concealed that fact. It could not properly be contended that the whole of Zipf's report, which included other matter, was a statement made by Decker.

On the other hand, the defendants' contention now seriously urged upon the court is that what Decker did, did not constitute the furnishing of any statement under 403(e) but was merely the granting of permission to Zipf to examine the books of the corporation under section 403(d) to which reference must now be made.

Section 403(d) provides in part as follows: "In renegotiating a contract price or determining excessive profits for the purposes of this section, the Secretaries of the respective Departments shall not make any allowance for any salaries, bonuses, or other compensation paid by a contractor to its officers or employees in excess of a reasonable amount, nor shall they make allowance for any excessive reserves set up by the contractor or for any costs incurred by the contractor which are excessive and unreasonable." And then section (d) further provides that "For the purpose of ascertaining whether such unreasonable compensation" etc., has been paid and "unreasonable costs have been or are being incurred, each such Secretary shall have the same powers with respect to any such contractor that an agency designated by the President to exercise the powers conferred by title XIII of the Second War Powers Act, 1942, * * * has with respect to any contractor to whom such title is applicable." 50 U.S.C.A.Appendix §§ 643–643c. See, also, Executive Order No. 9127, April 10, 1942, 7 F.R. 2753, 50 U.S.C.A.Appendix § 643 note. Section 643 of title XIII of the Second War Powers Act refers in part to section 10(l) of an Act approved July 2, 1926, 44 Stat. § 787, 10 U.S.C.A. § 310(l), which gives the government the right to inspect the plant and audit the books of certain contractors. Counsel for the defendant points out that sections 643 to 643c provide no penalty for false entries in books of contractors so audited. The defendants' contention as now stated is that although the Secretary of the Navy's letter to Triumph Explosives, Inc., authorized Zipf to obtain actual production costs from the corporation, in accordance with section 403(e), what Zipf did and was permitted to do by Decker was really only an examination of the books under section 403(d) and therefore this prosecution under 403(e) is not permissible. As expressed in the brief on the motion for a new trial, it is said: "It is most apparent that Mr. Zipf abandoned and deviated from the demands in the letter of June 18, 1942, in conformity with subsection (e) of section 403 under which a statement of actual costs of production is required, and proceeded to obtain the information under Executive Order No. 9127, April 10, 1942, 7 F.R. 2753 [50 U.S.C.A.Appendix, §§ 643–643c], and subsection (d) of section 403." In this connection defendants also call attention to the evidence that after Zipf's report had been received by the Navy Department a further meeting was held in Washington on August 21st by the Price Adjustment Board of the Department at which the whole matter of possible renegotiation of Triumph Explosives, Inc., Navy's contracts was further discussed. And that in consequence of that meeting Lt. Com. Seidman, (an expert accountant) was designated as the representative of the Navy Department to make a further inspection and audit of the corporation's books, and did so in September, 1942.

■ The defendants' contention as now made was not presented for my consideration, at least in its present form, at the trial. Nevertheless I have given it careful consideration. However, I am not persuaded that the point is sound as a matter of legal construction of the statutes. It will be noted that section 403(d) does give the power of auditing the contractor's books and it is quite possible to say that the subsequent audit made by Lt. Com. Seidman in September was under the authority of section 403(d). But 403(e) expressly says that *in addition* to powers conferred by the existing law the Secretary shall have the right to demand of a contractor statements of actual cost of production, etc. It is clear that the Secretary did make this demand on the corporation and that it was the duty of Decker, the executive vice president, to comply with the demand. The demand was obviously, from its wording, made under section

403(e) although that particular section was not referred to in the letter. Furthermore the letter stated that Zipf "is hereby designated as the representative of the Navy Department to receive such statements and to determine the times at which such statements may be furnished and the form and detail thereof desired by the Navy Department." When Zipf learned from Decker that the corporation's accounts were not segregated with respect to the particular Navy contracts, he then had to resort to the total operating expenses of the corporation as shown on the books for the nearest approximation of the actual costs of production. This resulted from the interview between Zipf and Decker. It did not appear in the evidence that during the course of Zipf's examination of the books he again had occasion to confer with Decker about the details, but as has been pointed out, the effect of the evidence was that Zipf asked for the data and was referred by Decker to the books for the data, Decker then knowing that the books contained to a very substantial amount false entries which would necessarily be reflected and were actually reflected in Zipf's report taken from the books, so far as the false entries were concerned.

■ The particular Act of Congress with which we are here dealing has not, so far as I am aware, been heretofore judicially considered and applied either in civil or criminal cases. It must, therefore, have a reasonable construction and if really ambiguous or uncertain should not be extended in a criminal case beyond its reasonably clear import. Looking, however, at the particular emergency war situation which existed when the Act was passed, it is an unreasonably narrow construction of an important act of policy to hold that there was no evidence in the case legally sufficient to show a violation by Decker of section 403(e). The fact that thereafter further or more extensive audits of the corporation's books were made by Seidman, or even that Zipf in his report went beyond the specific requirements in the letter, does not show that at one stage of the whole transaction there was not a violation by the defendants of section 403(e) which expressly states that the provisions thereof shall be "*in addition* to the powers conferred by existing law."

■ A subordinate point in the same connection made by counsel places emphasis on the word "actual" cost of production. It is here contended that actual costs means only costs after eliminating unreasonable and improper charges which can only be obtained from an audit of the books under section 403(d). But this view also unreasonably narrows the fair import of 403(e).

■ Counsel for the defendants also contend that there was no evidence legally sufficient to show the commission of an offense by the defendants as alleged in the indictment in that Decker was not a "person" * * * *required by the statute to make the statement.* Attention is called to the wording of the statute as follows: "Any person who willfully fails or refuses to furnish any statement required of him under this subsection, or who knowingly furnishes *any such statement*". (Italics supplied) The prior sentence authorizes the Secretary to demand of any *contractor* statements of actual costs of production, etc. It is thus argued that it is only the *contractor* (in this case, Triumph Explosives, Inc.) that was required to furnish the statement, and therefore Decker, although the vice president, (in the absence of the president) was not *required* to furnish the statement. It is further said by counsel that the indictment does not charge defendants with aiding, assisting or abetting the corporation to furnish false statements. It seems to be conceded that if the indictment had so alleged the point would not have been available. However, I think the contention is unsound under well known rules of federal criminal pleading, and especially in view of the statute that in effect makes those aiding, abetting, assisting, etc., liable as principals. 18 U.S.C.A. § 550. Nor is there any reasonable doubt that the relation of the defendants to the corporation was such that they are properly included within the prohibitions of section 403(e). Wood v. United States, 4 Cir., 204 F. 55, 58; Id., 232 U.S. 731, 34 S.Ct. 480, 58 L.Ed. 818; Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214; Collins v. United States, 8 Cir., 20 F.2d 574, 578; Melling v. United States, 7 Cir., 25 F.2d 92, 93.

So far what has been said relates particularly to the defendant Decker. I must, therefore, overrule the motion for a new trial made by him.

■ But after considerable reflection about the evidence in the case as a whole

26

as related to the defendant Kann, I have reached the conclusion that the motion as to him must be granted, for a different reason. Before the impanelling of the jury in this case counsel for Kann requested a severance in the trial so that he could be tried separately from Decker. At the time, in advance of knowing what the evidence would be in detail, but considering the indictment as a whole, it did not seem to me that there was real necessity for the severance for the purpose of a fair trial for Kann in this particular case. But on reconsideration of the developments of the whole evidence, I have reached the conclusion that the severance should have been granted. As will appear from a summary of the evidence in the charge, a very great amount of evidence in the case tending to establish the government's charges related to Decker and not to Kann, and that the great majority of the improper entries on the corporate books were, according to the government's evidence, attributable to Decker without evidence showing that Kann was aware that such entries had been made. It is true that the government's evidence also showed or tended to show, a small number of items in number and in aggregate amount (other than the commission item on foreign government contracts) authorized by Kann and constituting entirely improper charges to the corporation. This was frankly admitted by Kann and restitution has been made to the corporation of the smaller items and a substantial amount of the larger commission item. It is also vigorously contended by counsel for Kann that the evidence as a whole was not legally sufficient to show that he was personally responsible for the giving of the statement to Zipf as made by Decker and above discussed. There was no evidence to show that Kann ever met or talked with Zipf and no direct evidence to show that Kann ever saw the Secretary's letter requiring the statement. There was, however, some circumstantial evidence in the case which at the trial seemed to me to justify the submission of that issue to the jury. Much of the evidence relating to Decker was objected to during the trial by counsel for Kann but had to be admitted subject to exception to be followed by other evidence connecting Kann therewith. However, a great deal of this evidence was not followed up by the government in such a way as to connect Kann and an effort was made in the charge to the jury to properly so instruct them.

In summary, the motion in arrest of judgment by both defendants is hereby *overruled.* The motion for a new trial by Kann is *granted;* the motion for a new trial by Decker is *overruled.*