UNITED STATES v. MOSES.
Crim. No. 17384.

United States District Court
E. D. Pennsylvania.
July 19, 1954.

W. Wilson White, U. S. Atty., G. Clinton Fogwell, Jr., Francis Ballard, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Herman I. Pollock, Voluntary Defender, Edmund E. DePaul, Asst. Defender, Philadelphia, Pa., for defendant.

CLARY, District Judge.

The defendant Marie Moses was indicted on July 29, 1953, in five counts for a single violation of Title 21 U.S.C. § 174, and two violations each of Title 26 U.S.C. §§ 2553(a) and 2554(a). She was arraigned on November 2, 1953, entered a plea of not guilty, but was found guilty by the Court, without a jury, on March 11, 1954, of the two violations each of Sections 2553(a) and 2554(a), and not guilty on the single violation involving 21 U.S.C. § 174. A motion for judgment of acquittal on the four counts was timely filed by defendant and is now before the Court for disposition.

The facts necessary to decision of the case are not in dispute. The defendant, twenty-six years old, then residing with her mother and father on North Thirteenth Street in the City of Philadelphia, was on the date of the occurrences hereinafter set forth admittedly a drug addict. On December 16, 1952, when she was alone at home, Narcotic Agents Newkirk and Johnson rang the doorbell of her home and she came to the door. Agent Johnson, whom she knew by sight, introduced her to Agent Newkirk. They informed her that the purpose of their visit was to obtain information so as to secure drugs for themselves, representing themselves as fellow addicts. She invited them into her living room, told them that she did not have any drugs herself but that perhaps she could help them. She called one "Mac" Smith on the telephone, whom she stated to be her supplier. He was not at home and she told the two agents that "Mac" Smith's wife and she had "got into it on the phone" and that she was sure Smith would not call back. The agents were about to leave her house when upon looking out the window she saw a man by the name of Robert Cooper, along with one Billy Hazel and two other men, get out of a car near her house. She said to the agents, "Here is a fellow who maybe can get some". She had previously purchased from Cooper on her own account but he was a secondary source of supply to her, most of her purchases being made from Smith. Her purchases from Cooper were made at meetings with him in a drug store, near Tenth and Poplar Streets. Cooper and Hazel accompanied by the two unidentified white men came into the house. At that time there was an illegal drug transaction being consummated between the four. Hazel and the two white men went into the kitchen to inject heroin, the subject matter of that transaction which has no bearing on the present case. She introduced the agents to Cooper and they told him they were interested in the purchase of drugs. She introduced them as "friends of mine" and told Newkirk to talk to Cooper about it. Cooper asked her "Are they all right?" Her answer was "Yes". He questioned her how did she know they were all right, did she ever see them use drugs, and she said "No" but that she had seen Johnson on the Avenue quite a bit associating with other drug peddlers and addicts and knew they were all right. The two narcotic agents told Cooper the amount of drugs they required, Cooper fixed the price, and all six departed together from the defendant's residence. No money passed and, except as above stated, the defendant here did not enter further into any part of the two transactions involved in the present indictment. Her actions in this case were taken solely for the purpose of helping two persons whom she thought to be addicted to the drug habit and were not intended for personal gain, present or future, nor to secure drugs for herself. Thereafter, later that night, Newkirk and Johnson each bought some drugs from Cooper at a point near Tenth and Poplar Streets and these two sales are involved in Counts 2 to 5 inclusive, viz. selling a derivative and preparation of opium, to wit: heroin, not in or from the original stamped package, section 2553(a), and not pursuant to a written order of the person to whom the said heroin was sold on a form issued in blank for that purpose by the Secretary of the Treasury, Section 2554(a). The indictment charges the defendant as

a principal in the two sales under Title 18 U.S.C. § 2.

Title 18 U.S.C. § 2(a) reads as follows:

"Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The words "aids" and "abets" as used in the above statute have been interpreted as not being restricted to the technical meaning of the common law that the defendant must have been present at the time of the commission of the crime. Aaronson v. United States, 4 Cir., 1949, 175 F.2d 41.

The cases of Backun v. United States, 4 Cir., 1940, 112 F.2d 635, and Bacon v. United States, 10 Cir., 1942, 127 F.2d 985, are authority for the proposition that an abetter need not have a stake in the crime. In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." United States v. Peoni, 2 Cir., 100 F.2d 401, 402, cited with approval in Nye & Nissen v. United States, 1948, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919.

In the case of Johnson v. United States, 8 Cir., 1952, 195 F.2d 673, Chief Judge Gardner sets out the test of determining whether a person not a principal under common law aids and abets in the commission of a crime. At page 675 of 195 F.2d appears the following statement:

"To be an aider and abetter it must appear that one so far participates in the commission of the crime charged as to be present, actually or constructively, for the purpose of assisting therein. Thus, one who gives aid and comfort, or who commands, advises, instigates or encourages another to commit a crime may be said to be an aider and abetter. Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term 'aiding and abetting' implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient."

The question here resolves itself as to whether the facts of this case come within the definition set out by Judge Gardner. Marie Moses was neither present at the commission of the crime nor under the facts as I have found them did she have any stake in the success of the crime. From the facts, however, I do not feel that her participation was innocent. This case does not involve a mere inquiry as to where illegal narcotics could be secured. If all that the defendant had done in this case was merely to direct the agents to an address where, or even to a person from whom narcotics might be obtained, without more, she would not be an aider and abetter. But she did more. She "vouched" for the agents to the supplier Cooper. Her statement that they were safe people with whom to commit an illegal act,—viz. the sale of narcotics without a prescription— was an essential ingredient of the entire transaction. It is this conduct on her part of an affirmative nature that brings her within the terms of the statute as an aider and abetter. Her certification was an essential element in the illegal transfer of the narcotics. Therefore, even though she was not present at the commission of the crime and she had no stake in it, she did actively enter into it and actually procured its commission. Therefore, she is a principal and under the facts I have no alternative but to

declare her guilty as charged and to deny the motion for judgment of acquittal.

Defendant's counsel has earnestly contended that the facts of the instant case are governed by the decision of the 6th Circuit Court of Appeals in the case of Morei v. United States, 1942, 127 F.2d 827. In that case a doctor had been convicted of unlawful sale of narcotics under 26 U.S.C. § 2553. The basis of the conviction was that he was a principal as defined in 18 U.S.C. § 2(a), supra. In that case Treasury Agents had attempted to procure narcotics from the doctor, who directed them to a person in another city who he stated might be a possible source of supply. The court reversed the conviction holding that the mere reference was insufficient. The facts of that case are, of course, entirely dissimilar from the facts of the instant case.

The only other reported case which bears any similarity to the facts of the instant case is that of Jin Fuey Moy v. United States, 1920, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214. There the defendant was a registered physician charged with the illegal sale of narcotics, who did not actually sell the narcotics; instead, he issued prescriptions for opium derivatives to persons not his patients and unknown to him for the mere purpose of enabling them to continue to use drugs or sell the drugs to other users. He charged the person to whom the prescription was given according to the amount of drugs prescribed and directed them to a certain drug store to have the prescriptions filled. This conviction was upheld by the Supreme Court. It is different from the instant case in that the physician made a profit out of the transaction and therefore had a stake in the crime.

There is no doubt in this case that Marie Moses shared in the criminal intent of the principal Cooper and that there was between them a community of unlawful purpose for the commission of an offense against the laws of the United States. Her action, freely admitted by her in her own sworn testimony that she assisted in the consummation of the transaction by her statement to Cooper that he might safely commit a crime with the agents, constitutes conduct which makes her with Cooper a principal in these transactions. Therefore, the conviction was proper and an order will be entered denying the motion for judgment of acquittal.