**UNITED STATES of America,
Appellee,**

v.

**David Lyle FRYER, Appellant.**

**No. 19635.**

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1969.

Rehearing Denied Jan. 22, 1970.

Gary J. Pashby, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S.

---

D., for appellant; William L. Dickey, Sioux Falls, S. D., on the brief.

David V. Vrooman, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; William F. Clayton, U. S. Atty., on the brief.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

David Lyle Fryer was convicted under a one-count indictment charging a violation of 18 U.S.C. § 2312 for transporting a stolen motor vehicle from Luverne, Minnesota to near Valley Springs, South Dakota, knowing the vehicle to have been stolen. We affirm the judgment of conviction.

Assignments of error relating to the instructions are asserted, but the crucial issue here is the sufficiency of the evidence to sustain the jury verdict. This is so because defendant was convicted as an aider and abettor as there was no evidence that he actually occupied the stolen vehicle. Defendant did not testify or otherwise offer any evidence in his behalf.

On the night of September 30, 1968, a 1966 white Dodge Polara, the property of Michael Larkin, was stolen from a driveway at the side of the Rainbow Bar in Luverne, Minnesota. Larkin had left his home that evening as his wife was having a "clothing party." He first visited a friend for about an hour, and then went to the Rainbow Bar, bought some cigarettes and drank some beer, and was there for perhaps an hour. While he was there, three strangers walked in, one of whom he subsequently identified as the defendant. Larkin left the bar around 10:00 or 10:30 and discovered that his automobile had been stolen. He telephoned the sheriff and reported the theft, giving a description of the car and its license number. Larkin then proceeded to the sheriff's office and gave a theft report to a deputy sheriff.

Earlier that evening Larry Broer and Tony Van Engelenhoven, who had attended a fire department meeting about a block from the bar and were walking to their cars, noticed a 1968 El Camino, a pickup truck-type vehicle, parked beside a Chevrolet which Broer recognized as belonging to a fellow employee. There were two men in the El Camino and one of them got out and looked inside the Chevrolet, arousing Broer's suspicion. He memorized the license number of the El Camino and afterwards wrote it down. Later that evening Broer again saw the El Camino and was able to verify that the license number he had earlier written down was correct. The El Camino was still occupied by two men, but he had no opportunity to identify them. The next morning, when Broer learned that a car had been stolen, he went to the sheriff's office and reported what he had observed the night before and gave the sheriff the license number of the El Camino. These occurrences were in Luverne, Minnesota.

Upon being informed of the theft, the local police radioed notice to the local officers and the South Dakota authorities, giving the description and license number of the stolen car and advising that the theft had probably occurred within the past thirty minutes.

The South Dakota police relayed the message to their patrol squads and they communicated with each other as to their positions relative to Luverne, Minnesota. Maurice Peterson, a South Dakota highway patrolman, received the radio message and proceeded east on Highway 16 toward County Road 109 where he saw two sets of headlights approaching from the direction of Luverne, Minnesota. The lead car was the stolen Dodge and the car immediately following was the 1968 El Camino. Officer Peterson had encountered no traffic of consequence prior to seeing the approach of the two cars which appeared to be traveling together. When the Dodge reached the intersection of Highway 16 and County Road 109, it turned left in front of Peterson's patrol car onto the county road and then immediately turned right from the county road into a roadside park, and Peterson followed. The El Camino, following the Dodge, turned left also but continued down the county road instead

of turning into the roadside park. The Dodge with Peterson following pulled out of the park onto the highway and turned down County Road 109 again. This placed the El Camino in front of the Dodge. Peterson was able to ascertain that the license number of the Dodge was that of the stolen car and radioed for assistance. When the Dodge turned left onto a gravel road and before assistance arrived, Peterson stopped the car and told the driver to get out. About that time another police car drove up. The El Camino continued down the county road.

Allen Fryer, defendant's brother, was the driver of the Dodge. He was arrested and placed in the police car and when he heard Peterson and other officers talking on the radio concerning the direction the El Camino was traveling, he told the police that the El Camino belonged to him and was being driven by his brother, David Fryer, defendant here. Other officers arrested defendant on the county road. One of the arresting officers noticed an object in the back end of the El Camino but could not say what it was.[1] Defendant was fully informed of his constitutional rights and chose to remain silent, but he did ask the officers if they were going to take him back to Minnesota.

Larkin, the owner of the stolen Dodge, was notified of its recovery after midnight. The following day he went to South Dakota and brought the car back to Luverne, Minnesota. Later that afternoon Larkin noticed that a snow tire was missing from the trunk of his car and informed the local police who in turn notified the South Dakota police. Upon receiving this information, one of the South Dakota officers had a conversation with Allen Fryer and immediately went to the El Camino and found the missing snow tire in the bed of the El Camino truck. Both of the Fryers were incarcerated at that time and had been since

their arrests the night before. Later, Mrs. Larkin drove to South Dakota and brought the tire home. There is no question that it was in the trunk of the Dodge at the time it was stolen and was one of a pair of snow tires owned by Larkin.

From the above it is seen that the Dodge was stolen in Minnesota and that it was transported in interstate commerce to South Dakota. Defendant's brother was driving the Dodge at the time of its transportation and defendant was driving his brother's El Camino with the snow tire from the Dodge contained therein.

■ At the outset, we note that even though the indictment does not refer to the aider and abettor statute proof of aiding and abetting sustains the charge of the principal act. Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214 (1920); United States v. Francisco, 410 F.2d 1283, 1290 (8th Cir. 1969); Theriault v. United States, 401 F.2d 79, 85 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969); Nassif v. United States, 370 F.2d 147, 155 (8th Cir. 1966). In *Nassif, supra,* the court said at page 155:

> "An aider and abettor may be indicted directly with the commission of the substantive crime and the charge may be supported by the proof that he only aided and abetted in its commission."

Defendant asserts that the evidence does not suffice to convict him as an aider and abettor and that his motion for judgment of acquittal at the conclusion of the Government's case should have been granted. He contends that the evidence showed only that he was driving his brother's truck behind the stolen car, and that there is no evidence that he knew the car being transported in interstate commerce was stolen. Defendant relies strongly on the decision of this court in Johnson v. United States, 195

---

1. Deputy Sheriff George Newman testified:

    "Q. Now, what about the back end; did you notice anything there?

    "A. I observed an object in it. I could not honestly say what was in the back."

F.2d 673 (8th Cir. 1952).[2]  This case, however, is clearly distinguishable on the facts from *Johnson* and cases of similar import primarily because here the offense could not have succeeded without the active participation of defendant in driving the El Camino back to South Dakota.  Obviously defendant and his brother were acting in concert.  To have left the El Camino in Luverne, Minnesota would have led to certain detection inasmuch as the activities of the occupants of the El Camino in Luverne were of such a suspicious nature that witness Broer made a note of the license number of the El Camino and reported the same to the sheriff immediately upon learning that an automobile had been stolen at Luverne.  It is a matter for the jury to determine whether defendant was an aider and abettor and the facts here constituted a submissible case for that body's determination.  The facts and circumstances as set out above would justify a jury in finding that defendant was an active participant in the crime and an aider and abettor doing much more than lending "negative acquiescence."

■ In determining the sufficiency of the evidence, we must as a reviewing court consider the evidence in the light most favorable to the jury verdict, United States v. Francisco, *supra*; Teel v. United States, 407 F.2d 604 (8th Cir. 1969); Moodyes v. United States, 400 F.2d 360 (8th Cir. 1968); Meyer v. United States, 396 F.2d 279 (8th Cir. 1968), cert. denied, 393 U.S. 1017, 89 S.Ct. 621, 21 L.Ed.2d 561 (1969), and accept as established all reasonable inferences that tend to support the action of the jury.  United States v. Francisco, *supra;* Latham v. United States, 407 F.2d 1 (8th Cir. 1969); Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969).

Dyer Act cases sometimes present serious problems even when the defendant is an occupant of a stolen car, and while there might seem to be a lack of harmony in the decisions close review of the cases indicates that each must be decided on its particular facts.  In an opinion recently handed down by this court involving a Dyer Act case there was no direct evidence connecting the defendant with the commission of the crime or indicating that he was ever an occupant of the stolen car, but the circumstances were such that an affirmance was required.  This court, speaking through Judge Matthes, in United States v. Robinson, 419 F.2d 1109 at p. 1111 (8th Cir. Nov. 28, 1969), said:

"The crux of appellant's position is found in his assertion that 'there was not one scintilla of evidence whatsoever placing appellant in any custody and/or possession of the 1966 Cadillac at any time from the date of the alleged theft on December 1, 1967, through the date of his arrest on February 27, 1968.'  To be sure, the government did not prove this vital element of the offense by direct or testimonial evidence, but such failure was not fatal.  The principle is deeply entrenched that an offense may be proved by, and the conviction rest upon, circumstantial evidence.  (Citing cases.)

"Being mindful that the verdict of the jury must be sustained if there is sub-

**2.** The court in Johnson v. United States, 195 F.2d 673, 675 (8th Cir. 1952), said: "To be an aider and abetter it must appear that one so far participates in the commission of the crime charged as to be present, actually or constructively, for the purpose of assisting therein.  *  *  *  Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed.  As the term 'aiding and abetting' implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed.  It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient."

stantial evidence, taking the view most favorable to the government, to support it (citing cases), we have no difficulty in concluding that the sum total of the evidence, including all reasonable inferences drawn therefrom, was sufficient to warrant the jury in finding that the appellant was an active participant in and guilty of the offense of which he stands convicted."

■ We are convinced that the evidence adduced suffices to make a submissible case for the jury's determination.

■ Finally, defendant contends that the trial court erred in refusing to give four requested instructions based on this court's opinion in Johnson v. United States, *supra*. We have heretofore indicated the factual distinction in the two cases. The refused instructions are also grounded on the theory that where the Government's case rests on circumstantial evidence it may be a basis for conviction only if the evidence is completely inconsistent with innocence and excludes every reasonable hypothesis except that of guilt. Since Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), we have held that the instructions that circumstantial evidence alone affords a basis for conviction only if the evidence is completely inconsistent with innocence are now considered confusing and incorrect and the better rule is merely to instruct on the standards of reasonable doubt. United States v. Francisco, *supra;* Gregory v. United States, 365 F.2d 203 (8th Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967); Wood v. United States, 361 F.2d 802 (8th Cir. 1966), cert. denied, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966). We have carefully reviewed the trial court's instructions and are convinced that the jury was correctly and fully instructed on reasonable doubt and that the instructions as a whole were adequate, accurate and completely protective of defendant's rights.

The judgment of conviction is affirmed.