**Bessie Lee WARD, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Leo PRYOR, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Thomas JOHNSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

Nos. 8102, 8104, 8107.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 28, 1960.

Decided Nov. 2, 1960.

Samuel S. Mitchell, Raleigh, N. C. (Romallus O. Murphy, Wilson, N. C., and Richard Ball, Raleigh, N. C., on the brief), for appellant in No. 8102.

R. M. Holland, Roseboro, N. C., and James R. Nance, Fayetteville, N. C. (Mitchell E. Gadsden, Clinton, N. C., on the brief), for appellant in No. 8104.

Irvin B. Tucker, Jr., Asst. U. S. Atty., and Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Three of several persons convicted as co-conspirators have appealed from their conviction, but only two of them have appeared in this Court. The third has done nothing to indicate the ground of his appeal.

The principal question raised by one of the appellants is the sufficiency of the evidence, while the principal question raised by the other who appeared in this Court, is the admission of a written confession of a co-conspirator made while in custody after the conspiracy as to the declarant had terminated.

We think the convictions must be affirmed.

William Henry Bryant, Leo Pryor, Thomas Johnson, William Treadwell, and Bessie Lee Ward were jointly indicted for conspiring to transfer marihuana without the requisite written order in violation of the statute.[1] In addition, there were counts for the substantive offenses of specific transfers of marihuana. All of the defendants were convicted on the conspiracy count. Bessie Lee Ward, one of the appellants, was also convicted on one of the substantive counts which charged that she, Bryant and Pryor unlawfully transferred 2.1936 kilograms of marihuana on August 6, 1959. Leo Pryor, the other appellant who appeared in this Court, was also convicted upon a substantive count which charged that he and Bryant effected an unlawful transfer of 11.08 kilograms of marihuana on August 19, 1959. Thomas Johnson, the nonappearing appellant, was also convicted under a substantive count under which he, Bryant and Treadwell were charged with having effected an unlawful transfer of 490.9 grams of marihuana on July 23, 1959.

The prosecution offered evidence that a federal narcotics agent, Patch, arranged through Bryant for the purchase of two pounds of marihuana, the transfer of which was effected on July 23, 1959. Bryant sent Patch to Johnson, who, thereupon, spoke to someone else, reporting back to Patch that everything was arranged, and, thereafter, Treadwell delivered the marihuana to Patch.

On August 6, 1959, Patch again arranged with Bryant for the purchase of marihuana. Bryant was observed thereafter to leave the club which he ran in Raleigh, North Carolina, and drive to the home of Leo Pryor, from which he returned to report to Patch that the necessary arrangements had been made, and that the marihuana would be ready for delivery that night. In the early evening of August 6, 1959, Bessie Lee Ward was seen driving her car, with Bryant as her passenger, into Pryor's yard and from there to Bryant's club. Upon arrival there Bryant entered the club, told Patch that he had the marihuana which would be delivered to him by the girl in the car out front. Patch then approached the automobile, asked Ward if she had the "stuff," and she by motion of her head indicated that it was on the rear seat of the car. Patch then saw a burlap sack on the rear seat. Bryant came out of the club, however, and again entered Ward's car, which Ward drove several blocks away, where, preceded by Patch in his car, the delivery of the five pounds of marihuana was effected. Later Patch

1. 26 U.S.C.A. § 4742.

returned to the club to settle with Bryant for the purchase price of the marihuana at the rate of $100 per pound. Ward was with Bryant in a booth in the club and was present when Patch and Bryant settled their financial account and discussed arrangements for future purchases of marihuana.

Subsequently, arrangements were made by Patch to purchase twenty-five pounds of marihuana at a cost of $2,500, which was to be effected on the night of August 18–19. At about 9:00 o'clock that night Bryant told Patch that he had obtained the "stuff," but had to go get it. He left the club and was observed driving a Cadillac into Pryor's yard, where he left his car and approached Pryor's house. Presently two men approached the car from the house with a bag, which was placed in the car, and one re-entered the automobile and proceeded to drive back toward Raleigh and Bryant's club. The car was stopped en route, Bryant was arrested, and the bag containing the marihuana was seized.

Shortly after his arrest, Bryant was questioned by Patch and others. Bryant readily admitted his participation in the transaction, and said that Leo Pryor was the source of his marihuana. He signed a written statement that evening, which, among other things, disclosed the fact that Pryor was the source of his supply.

After his talk with Bryant, Patch went to Pryor's house, told Pryor's wife who answered the door that he wished to speak to "Myatt," a fictitious name which Patch had been told was used by Pryor, whereupon Pryor was called and Patch was admitted to the house. Patch told Pryor that he had been sent by Bryant to settle with Pryor for the purchase price of the marihuana. Pryor said he was due $1,800. The two then discussed future purchases of marihuana, Patch asking if he could not buy directly from Pryor without going through Bryant and the others. Pryor refused to sell future lots to Patch at the rate at which he sold to Bryant, but otherwise the matter of future purchases was left unsettled.

Patch then delivered $500 to Pryor and said they would have to go out to the automobile to get the rest of the money. Other agents were concealed in the automobile, and they arose as the two approached, arresting Pryor who still had the $500 in marked bills in his hand.

█ It is readily apparent from the foregoing recital that the evidence was more than sufficient to sustain the conviction of Pryor, Ward and Johnson, all of whom actively participated in supplying and transferring marihuana. Ward, who alone really raises the question, was not only seen to have driven her car into Pryor's yard with Bryant as her passenger and to return to Bryant's club, but she waited in the car with the marihuana, and, according to Bryant's declaration to Patch, the initial plan was that she, alone, was to effect the delivery. When she was asked by Patch if she had the "stuff," she indicated by a nod of her head where it was, and she later drove her car with Bryant as her passenger to the place where the transfer was effected. If there were any doubt of her knowledge of what she was doing, her participation in the conspiracy is made clear by her continuing presence as Patch and Bryant discussed arrangements for future sales of marihuana. There was no direct testimony which would indicate that Ward did not know the nature of the contents of the package, when she assisted in its transfer, nor is there any other explanation consistent with innocence of her participation in the transaction and her presence as future transactions were discussed.

We think the evidence was sufficient to support the jury's finding of Ward's guilt.

Though Bryant, on the night of his arrest, appeared freely to discuss and admit his guilt, he entered a plea of not guilty, was actively represented by counsel at the trial and went to the jury on the plea of not guilty. It was thus not inappropriate that the prosecution, having a written confession from him, offered the confession as evidence of his guilt.

When the confession was offered and again in the charge, the District Judge, with meticulous care, explained that the jury could consider the written confession only in connection with the charge against Bryant, and that they should give no thought to that confession when considering the innocence or guilt of any other co-defendant, all of whom were jointly on trial. Counsel for Pryor objected to the admission of the confession, but did not suggest the deletion of Pryor's name, or any other procedure which would give protection to Pryor in addition to the Court's instructions. Neither did Pryor complain then or now of the adequacy of the Court's admonition against the jurors' consideration of the Bryant confession in connection with the charges against any of the other defendants. Pryor's position on appeal, therefore, is that the admission of the Bryant confession was necessarily so prejudicial to Pryor's rights that despite the Court's admonition, Pryor is entitled to a new trial.

█ It has long been settled that the extra-judicial declarations of a conspirator made in furtherance of the conspiracy are admissible against his co-conspirators, as Bryant's declaration that Ward would effect delivery of the package transferred on August 6, 1959. But extra-judicial declarations made not in furtherance of the conspiracy, while admissible against the declarant, are not admissible against another who was not present when the declaration was made.[2] The recurring problem arises when defendants are jointly tried and when there is offered in evidence a declaration by one that is inadmissible against another co-defendant.

█ The Supreme Court has consistently held that with certain precautionary safeguards such declarations may be received when restricted by the Court's instructions to consideration in connection with the declarant's case only.[3]

It may be that in a particular case, admission of such a declaration should be otherwise restricted. It has been suggested, though it was not done in the trial of this case, that the names of defendants other than that of the declarant be blacked out from the written declaration.[4] In the normal case, such a precaution should be taken routinely. Perhaps in a particular case the evidence of guilt of a particular defendant might be so tenuous and the effect of a declaration of a co-defendant so devastating that the two defendants should not be tried together, but we have nothing of that sort of situation here. There was direct and persuasive evidence of Pryor's active participation. He, alone among the defendants, testified in his own behalf. He denied any connection with the marihuana. He testified that Patch, indeed, had called at his house on the night of August 18–19, 1959, and had thrust $500 upon him, but he said that he denied that. Bryant, or anyone else, owed him any money, and that he had declined to accept the money. He testified that the money was again placed in his hand as they approached the car shortly before his arrest.

Whatever may be thought of the relative reasonableness of the two versions of the events at Pryor's house on August 18–19, 1959, Pryor was entitled to have the jury consider the two versions without regard to Bryant's confession. The jury was adequately and properly instructed to that effect. The risk that the jury would not strictly follow its instructions is no greater here than it is in any case in which the extra-judicial declaration of a co-conspirator is received in evidence when it is not admissible against another co-defendant on trial.

█ Indeed, it is not so much the Bryant confession, itself, which was

---

2. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790.

3. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278; Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300.

4. See United States v. Delli Paoli, 2 Cir., 229 F.2d 319.

hurtful to Pryor, for, as to him, the jury would have understood the Bryant declaration, though the confession had never been offered. If Patch on the witness stand had testified to his acts in sequence, he would have informed the jury that he talked with Bryant after his arrest, and that Bryant told him the source of supply, a fact which Patch already had reason to suspect from observations of the other agents and which was already suggested by the testimony. Without indicating to the jury the identity of the source, as disclosed by Bryant, if Patch had then said that he immediately proceeded to Pryor's house where he stated that he had been sent by Bryant and was told by Pryor that he was due $1800 for the twenty-five pounds of marihuana, no member of the jury would have been left in ignorance of the Bryant disclosure. It was the sequence of events and the Patch version of the conversation with Pryor at Pryor's house that evening which was damning to Pryor. The written Bryant statement made it hardly more so.

Nothing could have been gained, therefore, by a severance of the trial, or, without severance, an exclusion of the Bryant confession. In either instance, the jury trying Pryor would have quickly understood what Bryant told Patch from Patch's testimony of his subsequent action and his version of his conversation with Pryor. Under these circumstances we think the harm to Pryor from the receipt in evidence of the Bryant admission was minimal. The possibility of some prejudice is present in every such case, but here it seems much less substantial than in most of those cases in which the admission of a declaration by one defendant, inadmissible against a co-defendant being jointly tried, has been approved.

Rule 14 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

Whenever it appears to the court that there is a likelihood of injustice to any defendant or to the Government, the court may exercise its discretion to order an election or grant a severance, as permitted by the rule. We recently discussed this general subject in Ingram v. United States, 4 Cir., 272 F.2d 567. The application for such an order should not be granted automatically or refused automatically, but the trial judge should be guided in his decision by the circumstances.[5] The danger of prejudice may sometimes be adequately avoided if the objectionable portions of the documentary evidence are obliterated before the documents are received in evidence, but no rule can be laid down encompassing every possible situation. It is in the judicial discretion. Here, however, Pryor, represented by counsel of his choice, did not move for a severance and did not suggest obliteration of the objectionable matter from the Bryant confession. Nevertheless, in the interest of justice, we have considered the matter and find no error because the unedited Bryant confession added little, if anything, to the force of the sequence of events and the conversation with Pryor as related by the agent on the witness stand.

Affirmed.

5. See, e.g., Judge Chesnut's opinion in United States v. Decker, D.C., 51 F.Supp. 20.