UNITED STATES of America

v.

Ronald Joseph BEATTY, Nelson Campbell and Angelo Groves.

Cr. No. 27577.

United States District Court
D. Maryland.

March 7, 1968.

Stephen H. Sachs, U. S. Atty., and Paul R. Kramer, Asst. U. S. Atty., for the Government.

Robert L. Millard, Kensington, Md., for defendant Ronald Joseph Beatty.

Russell J. White, Baltimore, Md., for defendant Nelson Campbell.

Milton B. Allen, Baltimore, Md., (Court-appointed), for defendant Angelo Groves.

FRANK A. KAUFMAN, District Judge.

Beatty, Nelson Campbell and Groves were indicted in the first count of a six-count indictment, which first count alleged conspiracy under 18 U.S.C. § 371. William Campbell, Nelson's brother,[1] was named as a co-conspirator in the first count but was not indicted as a defendant in any of the counts. Beatty, Campbell and Groves were indicted in the second count for counterfeiting activities under 18 U.S.C. §§ 471 and 2. The third and fourth counts named Campbell as a defendant for alleged violations of 18 U.S.C. §§ 474 and 2. The fifth count named Campbell and the sixth count named Beatty for alleged violations of 18 U.S.C. §§ 472 and 2.[2]

---

1. Nelson Campbell is usually referred to in this opinion as "Campbell." William Campbell is always referred to herein as "William Campbell."

2. 18 U.S.C. § 371 provides:
§ 371. *Conspiracy to commit offense or to defraud United States*
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,-000 or imprisoned not more than five years, or both.
If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 471 provides:
§ 471. *Obligations or securities of United States*
Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.
18 U.S.C. § 474 provides:
§ 474. *Plates or stones for counterfeiting obligations or securities*
Whoever, having control, custody, or possession of any plate, stone, or other thing, or any part thereof, from which has been printed, or which may be prepared by direction of the Secretary of the Treasury for the purpose of printing, any obligation or other security of the United States, uses such plate, stone, or other thing, or any part thereof, or knowingly suffers the same to be used for the purpose of

Groves pleaded guilty to the first count, charging conspiracy, and not guilty to the second count, and testified as a Government witness in the joint trial of Beatty and Nelson Campbell. The case was tried before a jury. Briefly, the testimony of Groves was that Beatty told Groves that Beatty was working at a press shop and could print some counterfeit money if he (Beatty) could obtain negatives; that he (Beatty) knew that Campbell had such negatives; and that Beatty felt there was some friction between himself and Campbell which made him not want to approach Campbell directly. Groves stated that he made the arrangements with Campbell under which Campbell supplied the counterfeit negatives and he (Groves) acted as the middleman between Beatty, as the printer, and Campbell, as the supplier of the negatives. Other testimony described in detail the roles played by each of the three, Campbell, Groves and Beatty.

During the trial, Beatty requested a mistrial for reasons discussed in this opinion. That motion was denied. Campbell and Beatty were each convicted by

printing any such or similar obligation or other security, or any part thereof, *except as may be printed for the use of the United States by order of the proper officer thereof;* or

Whoever makes or executes any plate, stone, or other thing in the likeness of any plate designated for the printing of such obligation or other security; or

Whoever sells any such plate, stone, or other thing, or brings into the United States any such plate, stone, or *other thing, except under the direction of the Secretary of the Treasury or other proper officer, or with any other intent, in either case, than that such plate, stone, or other thing be used for the printing of the obligations or other securities of the United States;* or

Whoever, has in his control, custody, or possession any plate, stone, or other thing in any manner made after or in the similitude of any plate, stone, or other thing, from which any such obligation or other security has been printed, with intent to use such plate, stone, or other thing, or to suffer the *same to be used in forging or counterfeiting any such obligation or other security, or any part thereof;* or

Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; or

Whoever prints, photographs, or in any other manner makes or executes any engraving, *photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engrav-* ing, photograph, print, or impression, except to the United States, or brings *into the United States, any such en- graving, photograph, print, or impres- sion, except by direction of some prop-* er officer of the United States; or

Whoever has or retains in his control or possession, after a distinctive paper has been adopted by the Secretary of the Treasury for the obligations and other securities of the United States, any similar paper adapted to the making of any such obligation or other security, except under the authority of the Secretary of the Treasury or some other proper officer of the United States—

*Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.*

18 U.S.C. § 472 provides:

§ 472. *Uttering counterfeit obliga- tions or securities*

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or *conceals any falsely made, forged, coun- terfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or impris- oned not more than fifteen years, or both.*

18 U.S.C. § 2 provides:

§ 2. *Principals*

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by *him or another would be an offense* against the United States, is punishable as a principal. As amended Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717.

the jury on all of the counts involving each of them respectively. Beatty thereafter filed motions for a mistrial and for a new trial, which were denied after a hearing. Because of certain developments which occurred while this Court was awaiting pre-sentence reports, which developments are related in detail in this opinion, this Court suggested that Campbell and Beatty file motions for a new trial. This they have done.

Campbell's motion for a new trial has been granted because this Court, over Campbell's objection, permitted Groves and two Secret Service agents to testify concerning two post-indictment conversations between Campbell and Groves, each of which conversations had been listened to by a Secret Service agent with the knowledge of Groves, but not of Campbell.

The first of such conversations occurred two days before trial. Groves testified that Campbell telephoned to him and asked if he could meet Groves and talk to him about the case. Groves arranged to meet Campbell at the house of Groves' girl friend and notified the Secret Service. The latter sent an agent who hid behind a half-open Dutch door and listened to the conversation between Groves and Campbell. That agent and Groves testified that Campbell attempted to persuade Groves either not to testify against Campbell, or in the alternative, to name William Campbell as the person who gave Groves the negatives; and that Nelson Campbell told Groves that William would not object to Groves' so doing.

The second conversation took place the day before the trial began. Groves, after receiving a message that Campbell wanted Groves to telephone him, went to the Secret Service office in Baltimore and permitted an agent to listen to a telephone discussion between Campbell and Groves. The conversation was similar to the one the night before.

In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), a co-defendant, cooperating with the Government, without Massiah's knowledge, met with Massiah in the co-defendant's automobile. The Government had installed a radio transmitter in the automobile of the co-defendant. With the knowledge of the co-defendant, but without the awareness of Massiah, a federal agent listened over his radio receiver to Massiah make self-incriminating statements to the co-defendant. At the trial the agent and the co-defendant testified with regard to those statements. Mr. Justice Stewart, speaking for the majority of the Court, with Mr. Justice White, joined by Mr. Justice Clark and Mr. Justice Harlan, dissenting, wrote that Massiah had been denied his Sixth Amendment right to counsel because of the use at his trial of

* * * evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. [Massiah v. United States, supra, at 206, 84 S.Ct. at 1203].

At the end of his opinion Mr. Justice Stewart concluded (at 207, 84 S.Ct. at 1203):

* * * We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial. [Emphasis by Mr. Justice Stewart].

In Beatty v. United States, 377 F.2d 181 (5th Cir. 1967) (a case involving a different and apparently unrelated man with the same name as the defendant Beatty in this case), a federal agent, with the consent of a secret Government informer, but without the defendant's knowledge, hid in the trunk of the informer's automobile and listened to the

defendant make incriminating statements about himself. The District Court permitted the agent and the informer to testify concerning those statements. The Fifth Circuit, in a two-to-one decision, affirmed, distinguishing *Massiah* because in the latter, the co-defendant had "induced" [3] Massiah to talk, whereas, in the Fifth Circuit *Beatty* case, the defendant himself had initiated and "suggested" [4] the conversation with the informer in order to threaten him with dire consequences if he had been informing on the defendant, and if he should testify against the defendant.

In Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967), the Supreme Court, on October 23, 1967, three weeks after the conviction of Ronald Joseph Beatty in the case at bar, filed the following *per curiam* opinion:

> The petition for a writ of certiorari is granted and the judgment is reversed. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 2d 246.

Mr. Justice Harlan and Mr. Justice White noted their dissent, without filing any opinion or comment.

After the Supreme Court's reversal of the Fifth Circuit in the latter's *Beatty* case, this Court held a hearing in the instant case and determined that the facts and issues of this case are controlled by the Supreme Court's action in the Fifth Circuit *Beatty* case, and therefore granted Campbell's motion for a new trial. The question now before the Court is whether Ronald Joseph Beatty should be granted a new trial because of the admission of testimony of the post-indictment conversations between Groves and Campbell, or for any other reason.

Beatty [5] was arraigned in this case on February 10, 1967. At that arraignment he was represented by his privately retained counsel, pleaded not guilty, requested a jury trial, and was given thirty

days to file motions. The case was called for trial on September 19, 1967, at 10:00 a. m. During a conference in the Court's chambers, which took place within a short time before 10:00 a. m., and which was attended by counsel for the Government, for Campbell and for Beatty, *voir dire* questions and similar matters were discussed. No request was made at that time for a severance, nor had any motion to sever been filed at any time prior thereto by either Beatty or Campbell. After the jury array had been assembled in the courtroom and the proceedings were ready to commence, counsel for Beatty, at his client's specific direction, orally presented a motion for a severance. After a hearing out of the presence of the jury, this motion was denied because the Court, while noting the lateness of the motion, held on the merits that prejudice and unfairness to Beatty did not appear to exist. *See* Rule 14 of the Federal Rules of Criminal Procedure.

Within seven days after the verdict, Beatty's counsel filed motions for new trial and mistrial. A hearing was held and these motions were denied. At a later date, after Government counsel called this Court's attention to the Supreme Court's opinion reversing the Fifth Circuit in Beatty v. United States, supra, this Court, on its own initiative, suggested to counsel for Campbell and Beatty that the Court would entertain motions for new trial on behalf of either or both defendants. Following a hearing, this Court granted a new trial to Nelson Campbell. For reasons which will now be set forth, this Court hereby denies Beatty's motion for a new trial.

Beatty's motion is based on a number of alternate grounds, in which there are embodied three principal contentions:

1. Campbell testified at the trial, on his own behalf. Beatty exercised his privilege not to take the stand as a witness. During Campbell's cross-examina-

---

3. Beatty v. United States, supra, at 188.

4. Beatty v. United States, supra, 377 F. 2d at 190.

5. All references in this opinion to "Beatty" are to Ronald Joseph Beatty, the defendant in this case, and not to the Beatty in the Fifth Circuit case, unless he is so described.

tion by Mr. Kramer, the Assistant United States Attorney representing the Government, the following occurred:

BY MR. KRAMER:

Q Did you know Mr. Beatty between September of '66 and the present time?

A Did I know him?

Q Yes; did you know you since last September?

A Well, the first day I met—

Q I don't want to know when you first met him.

A Well, I don't understand the question. Are you asking me did I know him?

Q Did you know him last—

A I have known him since 1957, 1958.

Q All right. You have known him as long as you have known Angelo? Well, roughly.

A Roughly, yes, sir.

Q Were you friendly with Mr. Beatty back in September of '66?

A No.

Q All right.

MR. WHITE: He said he didn't see him.

BY MR. KRAMER:

Q When was the—have you been friendly with him recently?

A Yes.

Q See him very much?

A Not the past few weeks I haven't. I mean prior to that, I believe I seen him maybe twenty times, something like that.

Q Were you friendly with him in October of '66?

A No.

Q How about any time before you and he were arrested for this charge?

A Over at the Maryland Penitentiary.

Q Well, what I'm asking—

MR. MILLARD: Now, Your Honor—

MR. KRAMER: I move to strike the remark.

MR. MILLARD:—that particular remark regarding my client, I move that it be stricken.

MR. KRAMER: I—

MR. MILLARD: Since the information has come out, I also at this time—

MR. KRAMER: Well, let's approach the Bench on this.

THE COURT: Just a moment. [Trial, September 28, 1967].

After the jury was excused, the following colloquy between Mr. Millard, counsel for Beatty, Mr. Kramer, and the Court took place:

MR. MILLARD: I think, Your Honor, I have basis there for a mistrial. I do not feel, in all sincerity and honesty, that Mr. Kramer was trying to elicit such information and I do believe it came out unconsciously, but the fact is that such—the fact that my client has a criminal record is now before the jury and I think it would prejudice him in this particular trial.

He has refrained from taking the stand, for his own reasons, but it's to be inferred between those of us now outside the earshot of the jury that such a procedure was taken on his part for the purpose of keeping his criminal record from the jury.

THE COURT: Mr. Kramer?

MR. KRAMER: Well, Your Honor, possibly—I'm not sure at this point. What Mr. Millard says may be very true. The question is, in the context of all the questions, whether the jury really got the impact at all of what was said, I mean when you read it from the plain record, at least as I observed it—

THE COURT: I think the jury did get it, Mr. Kramer. [Trial, September 28, 1967].

The Court, after consideration of counsel's arguments, denied Beatty's motion for a mistrial and has since restated that ruling on several occasions. In this case

there was more than ample evidence from which the jury could find beyond a reasonable doubt that Campbell produced the negatives and supplied them to Groves, that Groves acted as the middle-man between Campbell and Beatty, and that Beatty printed counterfeit United States currency.

This Court included the following in its instructions to the jury:

The law does not compel a defendant to take the witness stand and testify, and, ladies and gentlemen, I specifically instruct you that no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of the Defendant Ronald Joseph Beatty to testify.

However, as occurred in this case, when a defendant, namely in this case Mr. Nelson Campbell, has elected to testify, the law considers him to be a competent witness and his testimony is to be judged in the same way with reference to credibility as what I have told you about judging the testimony of any other witness.

The prior confinement, as such, in a penal institution of a defendant in a criminal case is not to be taken into account and should be totally disregarded by you, as members of the jury, in determining the guilt or innocence of that defendant. [Trial, October 2, 1967].

The record clearly discloses that this Court did not give any further instruction because, Beatty's counsel, after conferences with Beatty, specifically requested the Court, without in any way waiving Beatty's claim of entitlement to a mistrial, not to strike Campbell's reference to Beatty's prior confinement or to mention it in the Court's instructions to the jury at the close of the case.[6]

 Beatty, nevertheless, urges that he is entitled to a new trial because Campbell mentioned that he had known Beatty in the penitentiary. Admittedly,

---

6. During the preparation of jury instructions, the Court made the following remarks to counsel:

Now, we have had considerable discussion with regard to the motion for a mistrial, and that was made by Mr. Millard, concerning the statement volunteered by Mr. Campbell that he had known Mr. Beatty in the Pen.

The record will show that I gave Mr. Millard the option of whether he wanted anything stated to the jury when the jury returned after our discussion out of the presence of the jury with regard to that incident. Mr. Millard conferred with Mr. Beatty in the courtroom and Mr. Millard told the Court that Mr. Beatty did not want anything stated to the jury, that he did not want it highlighted.

Mr. Beatty, the Court observed, made his position quite clear to the Court, as well as to Mr. Millard at that time, and he nodded his agreement vigorously with Mr. Millard when Mr. Millard stated to the Court what Mr. Beatty's position was.

I have given Mr. Millard the option of whether he wants any specific reference in the instructions to the jury when the case goes to the jury about the remark that Campbell made about Beatty being in the Pen, and Mr. Mil-

lard has said that his client does not want any such instruction given.

However, we have been discussing the possibility of some kind of a general statement because of the fact that a number of persons involved in this case as defendants and as witnesses seem to have been incarcerated at one or more times.

Under those circumstances, the Court proposes to give an instruction substantially in the following words, * * *.

The fact that any witness in this case or any person whose name has been mentioned in this case was ever previously confined in a penal institution is not in any way relevant in this case in connection with your determining the innocence or guilt of either defendant and should be disregarded by the jury. [Trial, September 28, 1967].

During later discussion with counsel, on the day the jury was charged, the Court, with the agreement of all counsel, revised the language slightly as follows: * * * The prior confinement, as such, in a penal institution of a defendant in a criminal case is not to be taken into account and should be totally disregarded by the jury in determining the guilt or innocence of that defendant. [Trial, October 2, 1967].

the Government prosecutor did not seek that testimony. Clearly, it was an "incidental and inadvertent" remark. United States v. Dillinger, 341 F.2d 696, 699 (4th Cir. 1965). It was not, however, in the case at bar

> * * * the kind of thing that more than likely went unnoticed by the jury as it did by the court. [United States v. Dillinger, supra, at 699].

Nevertheless, this Court holds that in this case the passing reference by Campbell to Beatty's prior incarceration did not, when reviewed against the totality of the evidence in this case, substantially affect the jury's consideration of the innocence or guilt of Beatty, and thus did not require that Beatty be granted a new trial. In this connection, this Court has compared and contrasted United States v. Harman, 349 F.2d 316 (4th Cir. 1965) and United States v. James, 208 F.2d 124 (2d Cir. 1953) with United States v. Dillinger, supra; White v. United States, 279 F.2d 740 (4th Cir. 1960), cert. denied, 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960); Berra v. United States, 221 F.2d 590 (8th Cir. 1955), aff'd 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); United States v. Henderson, 185 F.2d 189 (7th Cir. 1950); and Means v. United States, 62 App.D.C. 118, 65 F.2d 206 (1933). See also Wakaksan v. United States, 367 F.2d 639 (8th Cir. 1966); Reistroffer v. United States, 258 F.2d 379 (8th Cir. 1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959); United States v. Giallo, 206 F.2d 207 (2d Cir. 1953), aff'd 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421 (1954).

2. Beatty contends that it was error to permit Groves to testify that he had pled guilty to the first count of the indictment. The instructions given by the Court to the jury included the following:

> An accomplice is defined to be one concerned with others in the commission of a crime. An accomplice in the commission of a crime is a competent witness, and you, ladies and gentlemen of the jury, have the right to consider his testimony.

> However, the testimony of an accomplice should be received by you with caution and weighed with care, with great care. While it is true that a jury may convict on such testimony alone, yet the jury should not rely on it unsupported for a conviction, unless it produces in their minds a positive conviction of its truth. If it does, the jury should act upon it.

> You are instructed, therefore, that you are to receive the testimony of an accomplice with caution and examine it with care. This does not mean, however, you are to arbitrarily reject it. It only means that you are to examine it with care, and if having done so you believe it is true, then you are to give it the same credence as the testimony of any other witness.

> In considering the testimony of an accomplice, or indeed of any witness, you should consider his appearance, his manner of testifying, the probability or improbability of the facts to which he has testified, his motive or interest in the case, whether or not his evidence is consistent with itself and with the other evidence or admitted facts of the case; and if having considered his testimony in the light of all of these rules you believe that he has told the truth, then I instruct you that a defendant can be convicted on the evidence of an accomplice alone, if that evidence convinces you that that defendant is guilty beyond a reasonable doubt. [Trial, October 2, 1967].

The Court also instructed the jury that

> Also, I instruct you that the fact that a codefendant, as occurred in this case, that a codefendant, Mr. Groves, plead guilty is not evidence of the guilt of any other defendant, or that any crime charged in the indictment was committed.

> The guilt or innocence of the defendants still on trial, Mr. Nelson Campbell and Mr. Beatty, must be determined by you, ladies and gentlemen

of the jury, solely by the evidence introduced in the trial of this case.

The fact that certain evidence has been introduced and admitted as to one of several defendants does not mean that the same evidence is to have the same effect as against the other defendant. [Trial, October 2, 1967].

■ Groves entered his plea of guilty more than four months before the trial commenced. The jury was informed through testimony and otherwise during the trial that Groves had so pleaded. While a guilty plea of one defendant cannot be used as evidence against any other defendant, the federal courts have, seemingly, uniformly held it not error, if proper cautionary instructions are given, for the jury to be informed during trial that one or more defendants have pleaded guilty. United States v. Kelly, 349 F.2d 720, 767 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); Koolish v. United States, 340 F.2d 513, 529–531 (8th Cir. 1965); Jiron v. United States, 306 F.2d 946 (10th Cir. 1962); Casados v. United States, 300 F.2d 845, 848 (5th Cir. 1962); United States v. Crosby, 294 F.2d 928, 948 (2d Cir. 1961), cert. denied sub nom. Mittelman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962), reh. denied, 369 U.S. 881, 82 S.Ct. 1138, 8 L.Ed.2d 285 (1962); Richards v. United States, 193 F.2d 554, 556 (10th Cir. 1951), cert. denied sub nom. Krupnick v. United States, 343 U.S. 930, 72 S.Ct. 764, 96 L.Ed. 1340 (1952); United States v. Falcone, 109 F.2d 579, 582 (2d Cir. 1940), aff'd 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940); United States v. Rollnick, 91 F.2d 911, 917 (2d Cir. 1937); Grunberg v. United States, 149 F. 81, 86 (1st Cir. 1906). Failure to observe the standards set forth in the above-cited cases led to reversals in Trussell v. United States, 278 F.2d 478 (6th Cir. 1960); Gaynor v. United States, 101 U.S.App.D.C. 177, 247 F.2d 583 (1957); Babb v. United States, 218 F.2d 538 (5th Cir. 1955); United States v. Hall, 178 F.2d 583 (2d Cir. 1950); and United States v. Toner, 173 F.2d 140 (3rd Cir. 1949).

■ In the case at bar, this Court believes that the Groves' testimony concerning his guilty plea was correctly admitted and that the necessary cautionary instruction was given to the jury.

3. Beatty also seeks a new trial because Groves and two Secret Service agents were permitted to testify concerning the two post-indictment conversations between Campbell and Groves. Beatty claims that the admission of this testimony constituted prejudicial error as to him.

After a Secret Service agent, called to testify as a Government witness, began to relate the conversation which occurred between Groves and Campbell in their first post-indictment discussion, counsel for Campbell asked for a conference out of the hearing of the jury in order to note his objection. After discussion of Campbell's objection, and before resumption of questioning of the agent in the presence of the jury, the following discussion involving the Court, counsel for the Government, counsel for Campbell, and counsel for Beatty occurred:

> MR. KRAMER: I would suggest, in an abundance of caution, that the jury be instructed that any conversations overheard by Agent Smelser between Nelson Campbell and Angelo Groves not be used as evidence against Ronald Beatty since Mr. Beatty wasn't present.

> THE COURT: I would suggest that you phrase your questions so as to make it—

> MR. KRAMER: Now, of course, defense counsel might not want that precaution, though I would suggest it.

> THE COURT: I would suggest you phrase your question, Mr. Kramer, so as to avoid asking the witness about the Defendant Mr. Beatty, to the point that you think that is advisable. If you cannot do that as part of your case, that is a risk you will take, in case there is any risk—

MR. KRAMER: There will be some conversation concerning Beatty which Nelson Campbell discusses, which is good evidence against—

THE COURT: Nelson Campbell.

MR. KRAMER: —Nelson Campbell and certainly probably Angelo Groves, so on those points, it's admissible.

THE COURT: It may also be admissible against Mr. Beatty if it is during the period of any conspiracy, if in fact a conspiracy is proved.

MR. KRAMER: The only thing I'm concerned that there might be a conspiracy—I'm not sure whether the conspiracy of the counterfeiting would continue after they were arrested, and that's the reason I suggested that the cautionary—

THE COURT: If this is after the conspiracy has ended—

MR. KRAMER: Well, this is just two days ago.

THE COURT: —after the alleged conspiracy has ended, if it was two days ago, then it would not be admissible against Mr. Beatty—

MR. KRAMER: Yes. That's why I suggested—

THE COURT: —and I will clearly instruct the jury to that regard.

MR. KRAMER: Right.

THE COURT: I would suggest, however, that I do that at the conclusion of the testimony—

MR. KRAMER: All right.

THE COURT: —and not in advance, unless counsel request me to the contrary. I think that to do otherwise would be to anticipate what is going to be said and perhaps let the jury think that the Court is supporting certain testimony or believes certain testimony before they have even heard it.

I would prefer to wait and comment afterward, unless you gentlemen, Mr. White and Mr. Millard—it is really your client, Mr. Millard—ask me to do the contrary.

MR. MILLARD: No, sir.

THE COURT: All right. Before I comment at the conclusion of the witness's testimony, if you want to have a Bench conference, I will be available, Mr. Millard particularly on this, and also you, Mr. White. Otherwise, I will comment as Mr. Kramer has asked.

I take it there would be no objection—

MR. MILLARD: No, sir.

THE COURT: —from the point of view of the defendants?

MR. WHITE: What?

THE COURT: There would be no objection on the part of you, Mr. Millard, or Mr. White, I take it?

MR. WHITE: To what?

MR. MILLARD: To his instruction.

MR. WHITE: To you instructing the jury that that evidence is not against—no, I have no objection.

THE COURT: That it is not admissible against Mr. Beatty. Of course, you could say it wasn't admissible against either, and you have your continuing objection, Mr. White. [Trial, September 21, 1967].

Thereafter, the examination of the federal agent was completed before the jury. The Court took a brief recess, the jury left the courtroom and the following discussion ensued:

THE COURT: Mr. Millard—

MR. MILLARD: Yes, Your Honor.

THE COURT: —and Mr. White— though particularly I address this to Mr. Millard as counsel for Mr. Beatty —Mr. Kramer suggested the possibility that the Court comment at this time during the trial concerning the lack of admissibility of anything that Nelson Campbell said with regard to Mr. Beatty during the alleged conversation in the kitchen of Mr. Groves.

Do you request that the Court make such a comment to the jury at this time? I certainly will include it in my instructions at the end of the case, unless there is testimony to indicate

that there was a conspiracy then in existence, in existence at the time of the alleged conversation, a conspiracy between Mr. Nelson Campbell and Mr. Beatty.

If I am convinced, and Mr. Kramer has at the Bench indicated that he almost concedes, that the conspiracy was over at the time of the conversation in the kitchen that was overheard, or allegedly overheard, from the steps by Agent Smelser, I certainly will give that instruction.

Now, do you want me to give it?

MR. MILLARD: No, Your Honor, I do not.

THE COURT: I mean make a statement at this point to the jury?

MR. MILLARD: No, Your Honor, I do not, and I state for the record my reason, in that *the name "Beatty" was mentioned only twice by the Agent and that it appeared to be entirely immaterial and would be natural under the circumstances since he was a co-defendant at that time,* indicted, his name in the paper and the like, and I would prefer not to have the jury's attention called specifically to it. [Emphasis supplied].

MR. KRAMER: I had requested the Agent not to delve into what the conversation was about. There is a considerable amount of conversation which I would consider a little devastating, and that's why I was afraid that some might come out during cross-examination and I made the original suggestion, but it didn't so we don't have anything to worry about.

THE COURT: Under the circumstances, I will certainly honor the request of Mr. Millard and adopt his position, which I would prefer to adopt, largely for the reasons that he has indicated and that you have, too, Mr. Kramer.

MR. KRAMER: Now, the other thing I'd like to mention while the jury is out, Your Honor, yesterday—

THE COURT: Now, I want to make it clear at this time that Mr. White

had stated for the record his objection and he had a continuing objection, which the Court has noted, with regard to the entire line of questioning and the answers given to the questions concerning the allegedly overheard conversation.

MR. KRAMER: Your Honor, yesterday Mr. Millard—

THE COURT: Just let me comment further that the hearsay point that was made by Mr. White was overruled. I think there was clearly an admission by Nelson Campbell against his own interest which would be admissible. Mr. White does not think so, for reasons which he has stated. [Trial, September 21, 1967].

■ At a later point during the trial, after a second agent had started to testify concerning the second, or telephone, post-indictment conversation between Groves and Campbell, the latter's counsel, out of the presence of the jury, noted his objection to that line of testimony, and counsel argued the legal questions involved, including the meaning of the Fifth Circuit's opinion in its *Beatty* case. After the Court overruled the objection of Campbell's counsel and before questioning was resumed before the jury, the Court asked Beatty's counsel: "Do you have any objection you want to state, Mr. Millard?" Mr. Millard responded: "No, sir." The Court was not asked by Beatty's counsel, at the conclusion of the trial, to instruct the jury that the testimony of Groves and the two agents with regard to statements made by Campbell during the two post-indictment conversations which he had with Groves, were inadmissible hearsay as to Beatty. The Court therefore understood that Beatty's counsel did not desire any such instruction for the reasons he had stated after testimony about the first post-indictment conversation. Those reasons clearly indicate the belief of Beatty's counsel that the testimony with regard to the post-indictment conversations was not prejudicial to Beatty and also reveal that the Court refrained from giving an instruc-

tion concerning their lack of admissibility against Beatty at the specific request of the latter's counsel.[7]

Beatty, nevertheless, presently contends that since the testimony of Groves and of the two agents has been determined to be inadmissible against Campbell under the doctrine of *Massiah,* as the latter has been applied by the Supreme Court in reversing the Fifth Circuit's *Beatty* decision, and that since the Court erroneously admitted the testimony as to Campbell, Beatty is entitled to a new trial as well as Campbell. But Campbell has been awarded a new trial solely because *his* Sixth Amendment rights were violated by this Court's admission of testimony concerning the post-indictment conversations. That testimony would otherwise have been clearly admissible as to Campbell, and usually has been held not prejudicial to a co-defendant, like Beatty, provided a cautionary instruction is given to the jury not to take such testimony into account against the co-defendant. Delli Paoli v. United States, 352 U.S. 232, 238, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), United States v. Gardner, 347 F.2d 405 (7th Cir. 1965), cert. denied, 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529 (1966); Ward v. United States, 288 F.2d 820 (4th Cir. 1960), cert. denied, sub nom. Pryor v. United States, 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed. 2d 695 (1961). In Ward v. United States, supra, at 823, Judge Haynsworth, speaking for Chief Judge Sobeloff, Judge Soper, and himself, wrote:

It has long been settled that the extra-judicial declarations of a conspirator made in furtherance of the conspiracy are admissible against his co-conspirators, as Bryant's declaration that Ward would effect delivery of the package transferred on August 6, 1959. But extra-judicial declarations made not in furtherance of the conspiracy, while admissible against the declarant, are not admissible against another who was not present when the declaration was made. The recurring problem arises when defendants are jointly tried and when there is offered in evidence a declaration by one that is inadmissible against another co-defendant.

The Supreme Court has consistently held that with certain precautionary safeguards such declarations may be received when restricted by the Court's instructions to consideration in connection with the declarant's case only.

7. Unsworn out-of-court statements attributed to an alleged conspirator, such as those attributed to Campbell by Groves or the two agents, are inadmissible hearsay against an alleged co-conspirator, such as Beatty, if the statements were made after the termination of the conspiracy. Delli Paoli v. United States, 352 U.S. 232, 237, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957); Lutwak v. United States, 344 U.S. 604, 617–618, 73 S.Ct. 481, 97 L.Ed. 593 (1953) reh. denied, 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352 (1953); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); United States v. Chase, 372 F.2d 453 (4th Cir. 1967). See also United States v. Smith, 390 F.2d 420 (4th Cir., Feb. 8, 1968). With regard to the non-conspiracy counts of the indictment in this case, see United States v. Sapperstein, 312 F. 2d 694, 698 (4th Cir. 1963).

The Court included only the following "boilerplate" concerning conspiracy in the course of its instructions in this case:

If and when it appears from the evidence that a conspiracy did in fact exist, and that a defendant was one of the members, then the acts thereafter knowingly done and the statements thereafter knowingly made by any person likewise found to be a member may be considered by the jury as evidence in the case as to any defendant found to have been a member, even though the acts and statements may have occurred in the absence and without the knowledge of such defendant, provided such acts and statements were knowingly done and made during the continuance of such conspiracy and in furtherance of an object or purpose of the conspiracy. Otherwise, any admission or incriminatory statement made outside of court by one person may not be considered as evidence against any person who was not present and heard the statement made or saw the act done. [Trial, October 2, 1967].

It may be that in a particular case, admission of such a declaration should be otherwise restricted. It has been suggested, though it was not done in the trial of this case, that the names of defendants other than that of the declarant be blacked out from the written declaration. In the normal case, such a precaution should be taken routinely. Perhaps in a particular case the evidence of guilt of a particular defendant might be so tenuous and the effect of a declaration of a co-defendant so devastating that the two defendants should not be tried together, but we have nothing of that sort of situation here. * * * (footnotes omitted).

Nor do we have such a problem in this case. Perhaps the jury gave more credence to all or certain parts of Groves' testimony because of the testimony of the two agents concerning the two post-indictment conversations. But Campbell's efforts, during his two post-indictment discussions with Groves, were directed solely toward attempting to dissuade Groves from testifying against him (Nelson Campbell). No portion of those conversations which was revealed in Court, either within or outside of the presence of the jury, incriminated Beatty in connection with any of the alleged offenses in this case. The position taken by Beatty's counsel, in discussions with the Court and other counsel, after the jury had heard the Secret Service agent complete his account of the first post-indictment conversation, was that the testimony regarding that conversation between Campbell and Groves was of little concern to Beatty. That position seemed sound and well-founded to the Court at the time it was stated by Beatty's counsel, and it still appears, from the vantage point of hindsight, to have constituted a reasonable judgment. Beatty's counsel did not alter his position until after this Court granted a new trial to Campbell. The fact that the testimony has now been held inadmissible as to Campbell does not affect in any way the lack of connection between the testimony and Beatty's participation in the alleged offenses.

In Greenwell v. United States, 119 U.S.App.D.C. 43, 336 F.2d 962 (1964) Greenwell's conviction was reversed because certain of his confessions, and other evidence, should not have been used against him under the doctrine of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). In addition, as a "separate and independent" ground for reversal (at 968) the Court noted that in Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963), cert. denied, 376 U.S. 964, 84 S.Ct. 1123, 11 L.Ed.2d 982 (1964), the confession of Greenwell's co-defendant, Seals, had been erroneously admitted because of delay in arraigning Seals, and stated:

* * * Since Seals' confession may not be used even against him, it should not be used against Greenwell.[8]

But in *Greenwell*, Seals, in his confession, clearly referred to and incriminated Greenwell even though he did not mention Greenwell by name. The Court remarked (at 969):

* * * it is difficult to believe that the jury was unable to divine who the "anonymous nobody" referred to in the confession was.

The testimony concerning the post-indictment statements of Nelson Campbell in his discussions with Groves, did not incriminate Beatty.

In Evans v. United States and Bruton v. United States, 375 F.2d 355 (8th Cir. 1967), in which there were joint indictments and trials, and in which both de-

8. The footnote in Greenwell is numbered "7" and reads:

The Government cites Delli Paoli v. United States, 352 U.S. 232 [77 S.Ct. 294, 1 L.Ed.2d 278] (1957) (Justices Frankfurter, Black, Douglas and Brennan dissented), where it was not feasible to delete references to a co-defendant contained in a confession; there the Court sustained refusal to sever the trials. But that case is not relevant here, for here, unlike *Delli Paoli*, the confession was inadmissible even against the confessor.

fendants were convicted and appealed, Evans' conviction was reversed because his confessions were held to have been obtained in violation of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and of one of its companion cases, Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Bruton's conviction was affirmed on the grounds that Bruton had not been prejudiced by the admission of the incriminating statements attributed to Evans. The Eighth Circuit opinion relied heavily upon the fact that the jury was carefully and clearly instructed by the trial judge that the testimony concerning Evans' statements was hearsay as to Bruton and was not to be considered in any way with respect to Bruton.

Bruton's petition for certiorari was granted by the Supreme Court, following which the Solicitor General of the United States filed a Memorandum,[9] in which he suggested that the judgment below be reversed and the case remanded for a new trial. In his Memorandum the Solicitor General stated that the rule of *Delli Paoli* which permits a confession of one defendant to be admitted against that defendant in a joint trial, with careful cautionary instructions to the jury not to consider such admission in the case against any other defendant, should not have been utilized in a case like *Evans* and *Bruton*. Several factors distinguish *Evans* and *Bruton* from the case at bar.

In *Evans* and *Bruton*, Bruton did not seek a severance at any time. In this case Beatty did seek a severance which was denied because this Court determined the joinder not to be prejudicial to Beatty.

In *Evans* and *Bruton*, the jury was specifically instructed not to consider Evans' out-of-court confession, in the case against Bruton. In this case a similar instruction was discussed and suggested by the Court but was not given because an objection to the Court so doing was made by Beatty's counsel and the Court considered the position stated by Beatty's counsel to be understandable and reasonable in the context of the trial itself.[10]

In *Evans* and *Bruton*, the evidence against Bruton, other than the Evans' confession, was characterized by the Solicitor General as "not strong." [11] In this case, the evidence against Beatty was, if not completely overwhelming, strong.

In *Evans* and *Bruton*, Evans' confession specifically and by name implicated Bruton. In the case at bar, the testimony concerning Campbell's post-indictment statements did not implicate Beatty. The Solicitor General, in his Memorandum, states (at pp. 9–10) that the Government should, "in the circumstances of this case, have taken more care than it did to make certain that the petitioner [Bruton] was not mentioned." Care to prevent any incriminatory references to Beatty was, in this case, taken by the Government.

In *Evans* and *Bruton*, the testimony showed joint, inseparable offending ac-

9. Memorandum filed January 5, 1968, in the Supreme Court of the United States by the Solicitor General. The Supreme Court has placed the *Bruton* case on its hearing list but it has not been reached on the date of the filing of this opinion. A copy of the Solicitor General's Memorandum has been placed in the file of this Court in this case.

10. If it was error for this Court, even in the face of the position stated by Beatty's counsel, not to instruct the jury as the Court originally suggested, such error would seem harmless error as to Beatty in view of the almost total lack

of connection between the testimony about Campbell's post-indictment statements and Beatty's innocence or guilt. See Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), reh. denied, 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352 (1953); Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Fed.R.Crim. P. 52(a).

11. It is also to be noted that Evans was acquitted when he was tried the second time and the confession was not admitted into evidence. (Solicitor General's Memorandum, p. 9.)

tion by the two defendants. In this case, the evidence against Beatty was largely independent of the evidence against Nelson Campbell, except for the Groves' link. While that latter exception cannot be disregarded, and while the credibility of Groves and the acceptance of his testimony by the jury is certainly important, nevertheless, viewed against the totality of all the evidence in this case, the possibility that the jury was significantly influenced with regard to Beatty's guilt or innocence by the testimony concerning Nelson Campbell's post-indictment admissions about himself appears remote.

In Reiss v. United States, 324 F.2d 680 (1st Cir. 1963) cert. denied sub nom. Jacobs v. United States, 376 U.S. 911, 84 S.Ct. 667, 11 L.Ed.2d 609 (1964), the First Circuit wrote (at 687):

> \* \* \* It is elementary that all defendants named as conspirators need not be convicted. Even if a case goes to verdict, the verdict as to one may be set aside without affecting the others. \* \* \* In the present case there was ample evidence of a conspiracy between Jacobs and Reiss. We do not agree that "this evidence cannot be segregated." Rather, as is intrinsic in our opinion, it is because it was separable that we ordered Dole's acquittal. While in such a situation Jacobs and Reiss might be entitled to a new trial, this would be only if we thought it reasonably possible that the jury's finding against them had in fact depended upon its belief in elements of the government's "case" against Dole. We have no such thought.[12]

See also McMillen v. United States, 386 F.2d 29 (1st Cir. 1967). In the instant

case, because of the separate and distinct roles played by Campbell, Groves, and Beatty, the evidence against Beatty is easily segregated.

In United States v. Johnson, 337 F.2d 180 (4th Cir. 1964),[13] in which the conviction as to Johnson was vacated and a new trial ordered, but convictions as to Edlin and Robinson were affirmed, Judge Sobeloff stated (at 203):

> Edlin launches a more general attack on the trial, claiming that evidence admitted against one or more of his co-defendants constituted "in its totality" prejudice as to him. This amounts to no more than a continuation of his argument, dealt with earlier, that conspiracy cases in general often produce evidence against one defendant which may prove prejudicial to his co-defendant.
>
> \* \* \* \* \* \*
>
> Where the trial judge finds that a defendant has been unduly harmed or his trial made unfair, he should in the interest of justice grant a new trial. United States v. Decker, 51 F.Supp. 20, 25–26 (D.Md.1943). Upon full consideration, we cannot say that Edlin had an unfair trial. In the particular rulings, and in the totality of the trial we perceive no unfairness. \* \* \*

In this case, this Court believes that Beatty was not prejudiced (1) because Campbell revealed Beatty's prior confinement; or (2) because the jury learned of Groves' guilty plea; or (3) by the testimony concerning the post-indictment conversations between Campbell and Groves. Consideration of each of the grounds advanced by Beatty as reasons for granting

---

12. Where the evidence could not be segregated, new trials of co-defendants have been ordered. United States v. Dunn, 299 F.2d 548, 555–56 (6th Cir. 1962); United States v. Decker, 51 F.Supp. 20, 26 (D.Md.1943). See also Ingram v. United States, 272 F.2d 567 (4th Cir. 1959).

13. The Fourth Circuit's judgment was affirmed by the Supreme Court as to John-son in 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). Edlin and Robinson did not seek review by the Supreme Court, but Edlin, after the Supreme Court's decision, did unsuccessfully seek what the Fourth Circuit characterized as modification of his sentence. United States v. Edlin, 370 F.2d 566 (4th Cir. 1966).

his motion for a new trial impels this Court, for the reasons stated in this opinion, to deny his motion, and therefore that motion is denied.